## *Ex Parte* O'BRIEN.*

### Division Two, March 18, 1895.

1. **St. Louis Court of Criminal Correction:** POWERS: JURISDICTION: INTENDMENT.  The St. Louis court of criminal correction is declared by statute to be a court of record (R. S. 1889, sec. 2, p. 2152), but it is a court of limited powers and statutory origin, not proceeding according to the course of the common law (*Ib.*, sec. 13; R. S. 1889, secs. 4055, 4328, 4329, 4359, 4360), and there are no intendments in favor of the jurisdiction of such courts, and no matters are to be held within their jurisdiction, unless they expressly appear to be so.

2. **Courts:** STATUTORY ORIGIN: POWERS: CONTEMPT: PRESUMPTION.  The rule that there are no intendments in favor of the jurisdiction of inferior courts, and that no matters will be held to be within their jurisdiction, except where they expressly appear to be so, applies with special force to proceedings by them to punish for alleged contempt; such proceedings being arbitrary, no presumptions will be indulged in their support.

3. **Contempt:** CRIMINAL OFFENSE: JUDGMENT: EXECUTION.  Contempt of court is a criminal offense and the fine imposed is a judgment in a criminal case.  The adjudication is a conviction and the commitment in consequence of it is an execution.

4. **Deputy Clerk of Court:** EVIDENCE: CONTEMPT.  The deputy clerk of a court, being the custodian of its records, may testify as to what entries, if any, were made in a proceeding before the court for contempt.

5. **Contempt of Court:** COMMITMENT: JUDGMENT.  A commitment for contempt of court, for disturbing its proceedings by making an assault in its presence, is illegal, where no judgment was rendered or ordered to be entered before the issuing of the commitment, there being in such case no adjudication that the person committed had been guilty of contempt.

---

*In the cases of *Ex parte Dewar* and *Ex parte Murphy*, the petitioners were discharged on the authority of this case.

6. ———: ———: ———: HABEAS CORPUS. Where the record fails to show a judgment of conviction of contempt, the person committed may avail himself of the remedy provided by *habeas corpus.*

7. **Habeas Corpus:** REVIEW OF ACTION OF COMMITTING COURT. A person committed for contempt by an inferior court has the right to show that such court acted without authority and to attack the jurisdictional recitals in the commitment, notwithstanding the provisions of the *habeas corpus* act (R. S. 1889, sec. 5379) that no court shall have power to inquire into the legality or justice of any process, judgment or order of any court legally constituted, nor into the justice or propriety of any commitment for contempt made by any court, officer or body *according to law and plainly charged in such commitment.*

8. **Contempt in View of Court:** JUDGMENT: PRESENCE OF PERSON CHARGED. The evidence in this case held to show the petitioner not guilty of contempt committed in the "immediate view and presence" of the committing court, in consequence of which the court had no jurisdiction over his person to award any punishment against him, in his absence, for such an offense.

## Habeas Corpus.

PETITIONER DISCHARGED.

### Thos. B. Harvey for petitioners.

(1) No appeal or writ of error would lie. *Habeas corpus* is the only remedy and the proper one. R. S. 1889, secs. 3263, 5378. The process (commitment) was issued under circumstances not allowed by law; for where the alleged contemptuous conduct occurs beyond the immediate view and presence of the court, the law requires (sec. 3263, *supra*) citation before commitment. And, second, the jurisdiction of the court was "exceeded as to person," because the court could have no jurisdiction of the person without bringing the individual before it by citation. Hurd on Habeas Corpus [2 Ed.] p. 360. Contempt of court is a specific criminal offense. Church on Habeas Corpus [2 Ed.]

308. "It is necessary in this, as in all other judicial proceedings affecting persons, that the court should have jurisdiction of the offense and of the person. The omission to serve him with notice renders the proceeding void." Hurd on Habeas Corpus [2 Ed.] p. 460. "If the record recites the facts which are facts which are preliminary, or conditions precedent to the right to hear and determine the merits of the cause, it is *prima facie* evidence only of their existence, and may. be disproved by extrinsic evidence." *Ib.* p. 367. "In assailing a judgment for contempt made by a court of limited jurisdiction, upon *habeas corpus*, it must be observed that no intendment will be made in support of the jurisdiction of the court as in the case of a commitment by a court of general jurisdiction." Church on Habeas Corpus, 318. And jurisdiction is not obtained by the mere assertion of it. *Ibid,* 323; *People v. Cassels,* 5 Hill (N. Y.) 164; *Holman v. Mayor,* 34 Tex. 668; *People ex rel. v. Liscomb,* 60 N. Y. 559; *People v. Devine,* 5 Park. 62. Where contempts are committed in the immediate presence of the court, it is that presence which confers jurisdiction over the person; and when the contempt occurs elsewhere, our statute directs that the offender shall have notice otherwise. The fact of the service or notice required. to give jurisdiction is one always open to proof in attacking a judgment. *Biddle v. Wilkins,* 1 Pet. 686. (2) The record must show affirmatively that petitioner was present in court when tried and convicted. *Biddle v. Wilkins,* 1 Pet. 686; *In re Pollard,* L. R. 2 P. C. 106; *Capel v. Childs,* 2 Cr. & Jer. 558; *King v. University,* 8 Mod. 148; *Stockham v. French,* 1 Bing. 365; *Ex parte Whitchurch,* 1 Atk. 55; *Hollingsworth v. Duane,* Wall. C. C. 77; Cooley's Con. Lim. [3 Ed.] p. 403, n. 2; *Ex parte Terry,* 128 U. S. 289.

*Martin, Bass & Carr* for respondent.

The St. Louis court of criminal correction is a court of record, and possesses all the powers and can perform the duties, and is subject to the restrictions of, a court of record according to the laws of this state. 2 R. S. 1889, p. 2152, secs. 1, 2. As a court of record it can punish as for criminal contempt. R. S. 1889, sec. 3261. Contempt of court is a specific criminal offense and the fine imposed or the order of commitment is a judgment in a criminal case. Church on Habeas Corpus, sec. 309, and cases cited; 4 Crim. Law Mag., 802. The following facts, among others, authorize a court of record to punish as for criminal contempt: *First.* Disorderly, contemptuous or insolent behavior committed during its sitting in immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due its authority. *Second.* Any breach of the peace, noise or other disturbance directly tending to interrupt its proceedings. R. S. 1889, sec. 3261. The statute points out no mode of procedure in contempt cases, except that "contempt committed in the immediate view and presence of the court may be punished summarily;" in other cases the party shall be notified, etc. R. S. 1889, sec. 3263. The record shows that the petitioners were adjudged guilty of contempt, and that the court found the acts to have been committed in the immediate view and presence of the court, and so adjudged it. The judgment is a judgment in a criminal case, and the adjudication is a conviction. Church on Habeas Corpus, sec. 308; 4 Crim. Law Mag., 802. An attack on a judgment of conviction by *habeas corpus* is a collateral one and subject to the rules restricting collateral attacks. Freeman on Judgments, sec. 619. The courts will not, in collateral proceedings, question the correctness of a judgment of a

court of record.   As the record stands it warrants the
commitment.   If error, it is of fact.   Courts will not
revise the judgment.   If error *dehors*, the record court
will not interfere by *habeas corpus*.  *Ex parte Toney*,
11 Mo. 661; *Ex parte Kaufman*, 73 Mo. 588;  *Ex parte
Stoner*, 4 Mo. 616;  *Ex parte Hollwedell*, 74 Mo. 394;
*Ex parte Page*, 49 Mo. 291.   In the case of a court of
general jurisdiction every presumption is in its favor
and it must be assumed that such court has passed
upon the jurisdictional facts, and thus its judgment
can not be affected by matters *dehors* the record in a
collateral proceeding like *habeas corpus*.   11 Mo. 661;
*People ex rel. v. Secomb*, 60 N. Y. 573.   The existence
and the validity of the process are the only facts upon
which issue can be taken.   These alone are material.
Not whether process was founded upon sufficient evi-
dence, or any evidence.   3 Hill, 659, and cases cited;
*People ex rel. v. Protectory*, 106 N. Y. 604.   The record
of a court of general jurisdiction, containing recital of
the jurisdictional facts in a commitment for contempt,
imports absolute verity.   The record can not be con-
tradicted.   Church on Habeas Corpus, secs. 316, 317,
and notes.   The irregularity must be patent of record.
Can not be shown, by matters *dehors* the record, that
two of the plaintiffs were dead at the commencement
of the action.   *Phillips v. Evans et al.*, 64 Mo. 22; *Holt
Co. v. Harmon*, 59 Mo. 165.   Sentence must be abso-
lutely void, otherwise can not be attacked on *habeas
corpus*.   74 Mo. 403; 44 Mo. 181; 47 Mo. 164; 11 Mo.
661.   The judgment herein is not void.   Failure to
give notice is a mere irregularity.   See article on "Void
Sentences," 4 Crim. Law Mag., 797; Hurd on Habeas
Corpus, p. 327; 9 Am. & Eng. Encyclopedia of Law,
220.   Under the act regulating *habeas corpus* the peti-
tioner must be remanded.   R. S. 1889, secs. 5376,

5379.   If the petitioner has been committed by a court having absolutely no jurisdiction, the validity of commitment may be determined on *habeas corpus*. *Ex parte Snyder*, 64 Mo. 58.   Writ of error will lie in proceedings like one at bar. *In re Greene Co. v. Kindred Rose*, 38 Mo. 390.   Where no appeal lies or other available mode of review, *certiorari* proper.   *State ex rel. v. Edwards*, 104 Mo. 125.   For instances of direct contempt or contempts committed in the presence and hearing of the court, see Rapalje on Contempt, sec. 23. The court when in session is present in every part of the place set apart for its use, and the use of its officers, and misbehavior anywhere about such premises is misbehavior in the presence of the court.   When it then and there disturbs the orderly procedure of business and interrupts the business of the court, it is then and there in the immediate view and presence of the court. Rapalje on Contempts, sec. 23; Church on Habeas Corpus, sec. 225; *Ex parte Terry*, 128 U. S. 289.   The physical presence of petitioner was not necessary at the rendition of the judgment against him.   The instant the first blow was struck, the contempt was complete. Jurisdiction immediately attached, and, the court having once had jurisdiction, it could not be lost by the petitioners not being present at the rendition of judgment.   *Middlebrock v. State*, 43 Conn. 257; *Ex parte Terry*, 128 U. S. 298; *In the matter of Daniel S. Baker*, 11 Howard, 418.

SHERWOOD, J.—The petitioner herein has sued out a writ of *habeas corpus*, and questions thereby the validity of certain proceedings had in the St. Louis court of criminal correction on the twenty-first of December, 1894.   Those proceedings had their origin in an attempt made by one Thomas Murphy, a policeman, on the complaint of Henry Roetter, to arrest one

Mark made by Officer Sullivan
as place of arrest of Wright,

William Wright, a negro, on a charge of carrying a revolver and disturbing the peace.

On attempting the arrest, the negro shot Murphy with the revolver, once through the shoulder and once through the side, and so dangerously that for some days his life was despaired of. The shooting occurred on November 19, 1894. Wright fled for it, but was captured the next night in Illinois and brought back to this state. When it became evident that his victim would not die, a charge of assault with intent to kill, was preferred against Wright and when Murphy, weak from his wounds that had so well nigh proved fatal, was able to attend the preliminary hearing of Wright, that hearing was set for December 19, 1894, in the court of criminal correction. Of the result attending that hearing, it is perhaps not improper to say that the ready facility with which Wright was discharged, is in striking contrast with the action of the grand jury in indicting Wright on the same day for the same felonious assault on Murphy, from which charge Wright had just been discharged by the court of criminal correction.

On the discharge of Wright he walked out of the court room, and when outside of the swinging doors of the court room, was arrested by relator on the old charge on which Murphy had previously attempted his arrest when Wright shot him. Assisted by his brother, officer Sullivan, petitioner managed to take Wright down stairs to prison.

This arrest and other incidents happening in immediate connection therewith, were made the occasion of a great deal of noise and disturbance on the outside of the court room, but the great preponderance of the evidence, as contained in the depositions taken in this cause, satisfies us that the arrest occurred at a point as indicated in the accompanying diagram, beyond

the range of the personal knowledge or vision of any one in the court room. Not only was this the case by reason of the *locality* where the arrest occurred, but by reason of two other significant facts, to wit: That the doors of the court room were closed and had been closed by the order of the court, except when momentarily swung open by the throng of persons passing out, and that the hallway or rotunda on the outside of the court room was filled with a surging crowd of whites and negroes, some of whom tried to rescue Wright from the police officers, and some of whom tried to assault him. That, owing to these circumstances, it was impossible for those in the court room to tell what was going on in the rotunda, as is shown not only in the manner already indicated, but inferentially by the inquiries made of others by the judge of the court of criminal correction on the day of the disturbance, as to *who* the parties were who caused that disturbance, and by threats that, did he know who they were, he would "fine them heavily," etc.; and finally by his visiting the negro, Wright, in jail on the twentieth or twenty-first of December and inquiring of him who were the parties, etc. Moreover, it is shown without contradiction, that the judge of the court of criminal correction is extremely near-sighted, and unable to distinguish objects, except when quite close to his visual organs.

On the twenty-first of December, the judge of that court ordered the chief deputy clerk, Fitzgerald, to issue commitments against the petitioner, as well as two other police officers, Thomas Dewar and Thomas Murphy, for alleged contempt of the court committed on the nineteenth day of December. These commitments were alike in form, the one against petitioner being as follows:

"The State of Missouri, City of St. Louis, ss.

"*To the Sheriff of the City of St. Louis, Greeting:*

"Whereas, on the nineteenth day of December in the year of our Lord, one thousand, eight hundred and ninety-four, at our St. Louis court of criminal correction, before our judge thereof, Martin O'Brien was guilty of disorderly, contemptuous and insolent behavior, committed during the sitting of said court, in immediate view and presence of the court, and directly tending to interrupt its proceedings and to impair the respect due to its authority, in this, to wit: That the said Martin O'Brien did then and there, during the sitting of court, in immediate view and presence of the court, and with the intent insolently and contemptuously, to interrupt the proceedings of this court and to impair the respect due to its authority, assault, beat, bruise and commit a murderous assault upon one William Wright, who was then and there in the peace of the state, and that said assault committed as aforesaid did tend to and actually did interrupt the proceedings of this court, and to impair the respect due to its authority.

"And, whereas, the court did consider and adjudge that the said Martin O'Brien for his said contempt committed as aforesaid, be imprisoned in the jail of St. Louis city for the term of ten days and also adjudged to pay therefor to the state of Missouri, for the use of the city of St. Louis, a fine of $50, as appears to us on record.

"You are, therefore, commanded to take the body of the said defendant into your custody and convey him to the jail of the city of St. Louis, the keeper whereof is hereby commanded to receive the said defendant and him there keep for the said term of ten

days or until he be otherwise discharged by due course of law.

"And you are further commanded, that of the goods and chattels, lands and tenements of said Martin O'Brien in your city you cause to be made the aforesaid fine, and for want of sufficient goods and chattels, lands and tenements, whereon to levy and make the said fine, you are hereby commanded to take the body of the said defendant into your custody and convey him to the jail of the city of St. Louis, the keeper whereof is hereby commanded to receive the said defendant and him there keep until said fine shall have been paid by said defendant or he be otherwise discharged by due course of law.

"And you are further commanded to make return of this writ, within thirty days from date, how you execute the same."

It is shown by the evidence that no notice of any sort was given petitioner of any intention to proceed against him for any alleged contempt, and that he knew nothing of any fine being assessed against him until he saw it in the papers.

The court of criminal correction is a court of record, according to the terms of section 2, page 2152, Revised Statutes, 1889. But, though that section says that court "shall possess all the powers, and perform the duties, and be subjected to the restrictions of a court of record, according to the laws of this state," yet, in order to determine what is the scope of its powers and the extent of its jurisdiction, regard must be had to other sections of the law of its organization, among others, to section 13, which confers on such court a similar jurisdiction to that conferred upon justices of the peace. 1 R. S. 1889, secs. 4055, 4328, 4329, 4359, 4360, etc. These statutory citations clearly show that the court of criminal correction is a court of limited powers and

statutory origin, and one not proceeding according to the course of the common law. The rule in this state is well established in relation to such courts, that there are no intendments in favor of their jurisdiction, and that no matters are to be held within such jurisdiction except they expressly appear to be so. *State v. Metzger*, 26 Mo. 65; *Rohland v. Railroad*, 89 Mo. 180, and other cases.

And the same rule holds with especial force with respect to proceedings to punish for an alleged contempt, when instituted by an inferior court. Such proceedings are of necessity arbitrary, and no presumptions are to be indulged in their support. *Batchelder v. Moore*, 42 Cal. 412.

As remarked by an author of acknowledged merit: "Contempt of court is 'a specific criminal offense,' and the fine imposed is a judgment in a criminal case. The adjudication is a conviction, and the commitment in consequence thereof is execution." Church on Hab. Corp. [2 Ed.] sec. 308. See, also, Rapalje on Contempts, sec. 155; *Ex parte Kearney*, 7 Wheat. 38.

Now the chief deputy clerk Fitzgerald does not show nor intimate by his testimony that *any judgment* was rendered or ordered to be entered. He was simply ordered to issue these commitments. And it was competent for him, being the custodian of the records of that court, to testify what entries were made, if any were made. *Durham v. Heaton*, 28 Ill. 264. So that it appears that there has been *no adjudication* that petitioner and his associates have been guilty of a contempt. If this be true, then the commitment, occupying as it does the place of *an execution*, has no basis on which to rest. For it is the *judgment* and not the *mittimus*, by virtue of which the party committed is detained. *People ex rel. v. Baker*, 89 N. Y. 460. Unless the *record* shows a judgment of conviction of contempt, a petitioner

may avail himself of the remedy provided by *habeas corpus*. *Ex Parte Adams*, 25 Miss. 883.

But there are other grounds to be now examined which go to the validity of the commitment in question: Our *habeas corpus* act contains a section which declares that:     'No court, under the provisions of this chapter, shall in any other matter have power to inquire into the legality or justice of any process, judgment, decree or order of any court legally constituted, nor into the justice or propriety of any commitment for contempt, made by any court, officer or body, according to law, and plainly charged in such commitment, as hereinbefore provided.''     Sec. 5379.

Notwithstanding this provision, however, it has been ruled in New York, upon a similar statute, that a party committed has "an undoubted right to show that the committing magistrate acted without authority; and this is so, notwithstanding the commitment recite the existence of the necessary facts to give jurisdiction. No court or officer can acquire jurisdiction by the mere assertion of it, or by falsely alleging the existence of facts on which jurisdiction depends." *People v. Cassels*, 5 Hill, 164. See also *Welch v. Nash*, 8 East, *loc. cit.* 403, as to the inability of assertions made on the record to create facts.

The force and effect of the statute of New York, as already adverted to, were elaborately discussed in *People ex rel. v. Liscomb*, 60 N. Y. 559, where *People v. Cassels, supra*, was quoted from with approval, and it was there said that:     "The prohibition of the forty-second section of the *habeas corpus* act, forbidding the inquiry by the court or officer, into the legality of any previous judgment, decree or execution specified in the twenty-second section, does not and can not, without nullifying, in good measure, the provisions of that and other sections of the act, take from the court or officer

the power, or relieve him from the duty of determining whether the process, judgment, decree or execution emanated from a court of competent jurisdiction; and whether the court making the judgment or decree, or issuing the process, had the legal and constitutional power to give such judgment, or send forth such process. It simply prohibits the review of the decision of a court of competent jurisdiction. * * * The inquiry is, necessarily, in every case, whether the process is void, and the officer or court having jurisdiction of the writ must pass upon it. If a process good in form issued upon a judgment of a court having jurisdiction, either general or limited, must in all cases be assumed to be valid until the judgment be reversed upon error, the remedy by writ of *habeas corpus* will be of but little value." And that the relief afforded at common law by "this, the greatest of all writs," is, under the constitution beyond the pale of legislative discretion and should not be "shorn of its power and its glory by a subtle and metaphysical interpretation; rather should it receive a liberal construction, in harmony with its grand purpose, and in disregard, if need be, of technical language used."

An author already quoted says: "But, while it is held in many of the earlier cases, that if a court has jurisdiction of the person, place, and subject-matter, its judgment can not be successfully attacked upon *habeas corpus*, other courts hold that jurisdiction of the person, place, and subject-matter are not alone conclusive, and that the jurisdiction of the court to render the particular judgment in question is a proper subject of inquiry. A court may have authority to hear and determine a case, but its determination or judgment must be within the confines of the law, and such power does not authorize it, simply because it has jurisdiction to render some judgment in the cause, to

trample down the prisoner's fundamental and constitutional rights by pronouncing a sentence unauthorized by law." Church on Hab. Corp. [2 Ed.], sec. 368; *Ex parte Lange*, 18 Wall. 163, and other cases cited.

Mr. Justice TRIMBLE in *Elliott v. Peirsol*, 1 Pet. 328, aptly remarks: "Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But, if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal, in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers. This distinction runs through all the cases on the subject; and it proves that the jurisdiction of any court exercising authority over a subject, may be inquired into in every court, when the proceedings of the former are relied on and brought before the latter by the party claiming the benefit of such proceedings."

"It is an elementary principle recognized in all the cases that, to give binding effect to a judgment of any court, whether of general or limited jurisdiction, it is essential that the court should have jurisdiction of the person as well as the subject-matter, and that the want of jurisdiction over either, may always be set up against a judgment when sought to be enforced, or any benefit is claimed under it." *Ferguson v. Crawford*, 70 N. Y. *loc cit.* 256, 257.

As, in the case at bar, the court of criminal correction is an inferior court of limited jurisdiction and statutory origin, it was competent, therefore, to attack its jurisdictional recitals, even if we go so far as to grant that the commitment paper contained such reci-

tals.  Cooley's Const. Lim. [6 Ed.], 501; *People ex rel. v. Warden*, 100, N. Y. *loc. cit.* 26; 2 Freeman on Judgments [4 Ed.], sec. 454.  But, at all events, we hold that the evidence to which reference has been made has sufficient probative force to countervail the most ample jurisdictional recitals which the court of criminal correction could have made.

We, therefore, hold the petitioner was not guilty of contempt committed in the "immediate view and presence" of that court, and that in consequence that court had no jurisdiction over his person to award any punishment against petitioner in his absence for such an offense, conceding for argument's sake that there was any judgment formulated to that effect, of which there is no evidence in this record.

The premises considered, we hold that the petitioner is entitled to be discharged, and it is accordingly so ordered.  All concur.