# Court of Appeals.

February 25, 1902.

## PEOPLE EX REL. ALLEN v. HAGAN.

(170 N. Y. 46.)

COMMITMENT—MUST STATE ON ITS FACE NATURE OF CRIME—PENAL CODE, SECTION 351.

A commitment to answer "upon a charge of violation" of section 351 of the Penal Code is void, and conferred no authority upon the warden to detain relator in prison, as said section refers to fifteen different or distinct acts, some of which are or may be lawful, some felonies and others the subject of merely civil remedies.

GRAY, J., dissenting.

APPEAL from an order of the Appellate Division of the Supreme Court in the First Judicial Department, entered July 9, 1901, which affirmed an order of Special Term overruling a demurrer to the return to a writ of habeas corpus, dismissing such writ and remanding the relators to the custody of the defendant.

The facts, so far as material, are stated in the opinion.

John R. Dos Passos and Edmund F. Harding, for appellants.

William Travers Jerome, Dist. Atty. (Howard Gaus, of counsel), for respondent.

Joseph S. Auterbach and Herbert Barry for the Jockey Club et al., interested parties.

O'BRRIEN, J.: The order and judgment from which this appeal was taken dismissed a writ of habeas corpus sued out by the relators, who are detained in custody by the defendant as warden of the city prison of the city of New York. The petition upon which the writ was granted alleges that the relators were unlawfully restrained of their liberty and imprisoned by the warden, although innocent of any crime what-

ever, and it contained a statement of all other jurisdictional facts necessary to authorize a court to inquire concerning the cause of the relators' imprisonment. The writ was granted by a Justice of the Supreme Court commanding the defendant to produce the relators before a Special Term of the court upon a day named, and then and there to make return to the court of the time and cause of the imprisonment. The defendant made return to the writ in writing, in which he stated that he detained the relators in custody under and by virtue of a warrant of commitment signed by William Travers Jerome, a justice of the Court of Special Sessions of the city of New York. The commitment was set forth in the return *in haec verba* and constitutes the whole of the return. It purports to have been issued in the name of the People of the State of New York and is addressed to the warden and keeper of the city prison of the city of New York. A separate commitment was made for each of the three relators, but all are in precisely the same form, and it will not be necessary here to give the operative words of more than one, as follows: " An order having been this day made by me that Theodore Allen be held to answer to the Court of General Sessions in the said city and county upon a charge of violation of section 351 of the Penal Code of the State of New York, committed by said Theodore Allen in the city and county of New York, on the ninth day of April, 1901, you are commanded to receive said Theodore Allen into your custody and to detain him until he be legally discharged. Dated at the city of New York this twenty-third day of May, 1901." The relators in open court demurred to this return, and after a hearing before the court the demurrer was overruled, the writ of habeas corpus dismissed and the relators remanded to the custody of the warden. This decision has been affirmed at the Appellate Division, and the relators have appealed to this court.

The learned counsel for the relators has, in a very elaborate argument, attacked the constitutional validity of that section of the Penal Code referred to in the warrant, and has also

presented his views with respect to its legal construction. In fact, the argument upon both sides has been largely, if not entirely, devoted to these questions. We do not think that it is necessary or proper to enter upon an examination of these questions upon the present record, since it is quite impossible to deal with such questions in the absence of some specific charge or some specific finding of fact. It is quite useless to enter upon a discussion with respect either to the constitutional validity or the legal construction of this statute until we know what particular act has been committed which is claimed to constitute a violation. A discussion of such questions upon the present record would, we think, be a departure from the real issue or question presented, and, therefore, not proper. It is generally the safer course to meet and decide such questions as are necessarily involved in each case and to leave others to be determined when they arise and are properly presented by the record. The validity or constitutionality of the statute does not arise until we have before us a valid commitment.

The record before us, properly speaking, presents but one question, and that is with respect to the authority of the defendant to detain the relators in custody under the commitment already referred to. In other words, the question is whether this commitment on its face is sufficient authority to authorize the detention and imprisonment of the relators. That question was clearly raised by the demurrer to the return, and that question alone, so far as we can perceive from the record, was the only one involved or necessarily determined. We think that the warrant of commitment upon its face is so defective that it cannot be held to justify the detention or imprisonment of the relators. A commitment is a warrant, order or process by which a court or magistrate directs a ministerial officer to take a person to prison or to detain him there. From the earliest times, as appears from the reported cases on the subject, this process was required to contain a statement of the nature of the crime with which the prisoner was charged. The legal

requisites of such a process are thus described by an acknowledged authority on the subject of crimes and criminal procedure as defined by the common law: " It must be in writing, under the hand and seal of the person by whom it is made and expressing his office or authority, and the time and place at which it is made, and must be directed to the jailer or the keeper of the prison. It may be made either in the name of the King, and only tested by the person who makes it, or it may be made by such person in his own name. It may command the jailer to keep the party in safe and close custody; for if every jailer be bound by the law to keep his prisoner in such custody, surely it can be no fault in a mittimus to command him so to do. It ought to set forth the crime alleged against the person with convenient certainty, whether the commitment be by the privy council or any other authority; otherwise the officer is not punishable by reason of such mittimus for suffering the party to escape; and the court before whom he is removed by habeas corpus ought to discharge or bail him. And this doth not only hold where no cause at all is expressed in the commitment, but also where it is so loosely set forth that the court cannot adjudge whether it were a reasonable ground of imprisonment." 2 Hawkins Pleas of the Crown, chap. 16, p. 119. In another authority the rule in regard to this process is stated as follows: " But it is necessary to set forth the particular species of crime alleged against the party with convenient certainty, whether the commitment be by a justice of the peace, a secretary of state, the privy council or any other authority." 1 Chitty's Crim. Law, chap. 3, p. 111. These rules in regard to the requisites of a commitment have been adopted by the courts of this State.

In Bradstreet v. Furgeson, 17 Wend. 181, Chief Justice NELSON, said: " There are several reasons for setting forth with distinctness the crime of cause in the warrant of commitment; otherwise the officer is not punishable if the prisoner escape, nor is it an offense to aid in the escape; and the court or judge before whom he is brought by habeas corpus will be

bound to discharge or bail him. Where the prisoner is committed on the suspicion or conviction of an offense the particular crime must be stated." Whenever the question has arisen in this court concerning the sufficiency of such a commitment, it has been decided, substantially, in accordance with the principles above stated, although it has been held that the statement of the crime in the commitment, according to its statutory definition, was sufficient. People v. Johnson, 110 N. Y. 134. But in that case the accused was charged with burglary and larceny which *ex vi termini* imports a criminal act.

In Hewitt v. Newburger, 141 N. Y. 538, it was held that the process, in substantially the same form as that presented by the record in this case, was absolutely void. The difficulty with the process in this case is that it does not state any crime whatever with which the relators were charged, or for which they were imprisoned. All it states is that they are charged with violating a certain section of the Penal Code. This section has been analyzed upon the briefs of the respective counsel in this case, and it is claimed that it contains fifteen different acts which are or may be offenses against it. But it is provided that none of the acts therein specified, that are the subject of some other penalty, shall be deemed to be a violation, and, therefore, the statute, in substance, provides that certain acts therein specified are felonies; that certain other acts are lawful; for instance, if committed upon the race track; and that still other acts therein mentioned may not amount to a crime at all, providing it is by some other law made the subject of a civil penalty. Hence, it is impossible, in the absence of any statement of the particular act with which the relators were charged, to know whether they have been charged with anything amounting to a crime. A crime is defined to be " an act or omission forbidden by law." (Penal Code, sec. 3.) It is the act or omission that constitutes the crime, and to say that a person has violated a section of the Penal Code that refers to fifteen different or distinct acts, some of which are or may be lawful, some of which are felo-

nies, and others the subject of merely civil penalties, charges a crime, would be a very loose and dangerous construction in criminal procedure. Whether the relators violated the section of the Penal Code specified or not depends entirely upon the particular act that they committed, if any, and since no act is specified in the commitment, it cannot fairly be said that the process specifies or charges any crime whatever. We think, therefore, that the commitment was void and conferred no authority whatever upon the warden to detain the relators in prison. The demurrer to the return was, therefore, well taken, and should, we think, have been sustained. The commitment of a magistrate, authorized to issue warrants and conduct examinations concerning the commission of crimes and to commit the accused for trial, must state upon its face the nature of the crime charged with reasonable certainty. It is not necessary that the offense should be specified with the precision required in an indictment, but in order to confer authority to imprison the accused, or to detain him in prison, it must show that he is charged with some crime known to the law by some legal or statutory definition, or that he is charged with some act or omission specified which in law amounts to a crime. In this case the commitment fails to disclose the act or omission forbidden by law with which the relators were charged, or any crime by name which would necessarily or in law include an unlawful act, and, therefore, it conferred no authority upon the defendant to detain them in custody. The legislature evidently thought that the form of a commitment was of sufficient importance to prescribe a form to be used by committing magistrates. This form is found in the Code of Criminal Procedure (sec. 214), and requires the magistrate to state, briefly, the nature of the crime charged. It is impossible to hold that this requirement was complied with in the case at bar.

In cases where a party has been tried and convicted of a crime the office of a commitment is superseded by the judgment. The accused may then be detained in custody by virtue of a certified copy of the judgment, and a formal commitment

is not necessary, and if necessary can be supplied at any time; but a defect in the commitment is no ground for the discharge of the accused so long as there is a valid judgment of conviction behind it. People ex rel. Trainor v. Baker, 89 N. Y. 460. But in this case there was no conviction, nor even an indictment. The right of the defendant to hold the relators in custody rests entirely upon the commitment of the examining magistrate; and in order to justify the detention of the party accused it must state the nature of the crime charged. The case of People ex rel. Loughlin v. Finn, 87 N. Y. 533, cited by the learned counsel for the defendant, does not support or tend to support the commitment in this case. It was held there that the commitment was sufficient, but it stated upon its face that the party was committed on a charge of larceny.

It will be seen upon an examination of the section of the Penal Code referred to in the commitment in question, that it enumerates at least fifteen different acts which are said to be forbidden, and then closes in the following words: " or any person who aids, assists or abets in any manner in any of the said acts, which are hereby forbidden, is guilty of a felony, except when another penalty is provided by law, and upon conviction is punishable by imprisonment in the State prison for a period not less than one year, nor more than two years, or by such imprisonment, together with a fine not exceeding two thousand dollars. When an exclusive penalty is provided by law for an act hereby prohibited, the permitting of the use of premises for the doing of the act in such case shall not be deemed a violation hereof." Therefore, when this section is read in connection with recent decisions of this court in regard to its scope and application (People ex rel. Sturgis v. Fallon, 152 N. Y. 1-20), it is manifest that no crime or criminal offense can be stated or described by a mere reference to the section, which indicates nothing except the place where the law is to be found. It follows that the order and judgment appealed from should be reversed and the relators discharged.

GRAY, J. (dissenting): I must dissent from a determination

of this appeal, which appears to be very technical and to rest upon a ground not taken in brief, or upon argument.    Furthermore, while it is true that the relators demurred to the return to the writ, they certainly had no such point in their minds as Judge O'BRIEN's opinion raises.    Their petition for the writ, which, under section 2019 of the Code of Civil Procedure (sub. 5), is required to "state in what the alleged illegality consists," not only fails to state the illegality to consist in the form of the commitment, now, *ex mero motu,* suggested; but it expressly sets forth that the cause of the imprisonment was "the crime of book-making."

Again, in my opinion, when the justice of the Special Sessions, in issuing his warrant of the commitment, specified that it was "upon a charge of violation of section 351 of the Penal Code," he does state, sufficiently for the protection of the officer executing it, the offense, or crime, for which the prisoner is held to answer at the General Sessions.    The statute thus referred to was directed against poolselling and book-making. The office of a commitment is not to furnish information, or a detailed statement of the circumstances, under which the relator is charged to have offended against the statute.    People v. Johnson, 110 N. Y. 134-142.    But, however that may be, I think the objection, if one it be, has never taken by the relators in any available way and, therefore, it is not for us to raise.

PARKER, Ch. J., MARTIN, VANN, CULLEN and WERNER, JJ., concur with O'BRIEN, J.; GRAY, J., dissents.

Judgment reversed, etc.