STATE ex rel. Tyrone
BURRELL–EL, Relator,

v.

Honorable Henry E. AUTREY and
Honorable James R. Dowd,
Respondents.

No. 54401.

Missouri Court of Appeals,
Eastern District,
Division Five.

May 10, 1988.

Motion for Rehearing or Transfer to Supreme Court Denied June 21, 1988.

Application to Transfer Denied
July 26, 1988.

Doris Gregory Black, St. Louis, American Jewish Congress, et al., amicus curiae.

Leonard J. Frankel, Edward M. Roth, Clayton, for relator.

Edward James Hanlon, James J. Wilson, St. Louis, for respondents.

SIMEONE, Senior Judge.

This is an original proceeding in prohibition to prohibit the respondents, Hon. Henry E. Autrey and Hon. James R. Dowd, Associate Circuit Judges in the City of St. Louis, from enforcing their orders of direct criminal contempt directed to relator for refusing to remove his headdress or "fez" while in court because of relator's alleged religious beliefs. We have jurisdiction. Mo. Const., Art. V, § 4. On March 2, 1988, we issued our preliminary order. We now make our preliminary order permanent.

### I.

These proceedings began when relator was arrested on December 10, 1987, for carrying a concealed weapon. Bond was set.

On three separate occasions, relator appeared in court and was cited for contempt of court for refusing to remove his "fez" [1] in the courtroom, because he alleged it was part of his religious attire as a member of the Moorish Science Temple of America. He claimed that wearing of the fez was part of his religious beliefs, and that he was required to wear it and was authorized to do so as a part of his constitutional right of the free exercise of religion under the United States and Missouri constitutions.

On December 18, 1987, relator appeared before respondent, Henry E. Autrey, Presiding Judge of Division 25 wearing his fez. Relator was told to remove his headdress. He refused on religious grounds. Relator was found in contempt, and sentenced to two days in jail, but was released on bond, which was reduced to $250.00. On December 22, 1987, respondent Autrey delivered "Findings of Fact in Order of Contempt" to relator's attorney.

On January 21, 1988, relator and his counsel again appeared in court on his bond before respondent, James R. Dowd, now presiding in Division 25, and again wore his fez. He was advised to remove the headdress but refused to do so. He was told he would be in contempt, but refused because the headdress was a part of his religious practices. Relator was found in contempt and assessed a fine of $1,000.00, which was stayed pending a ruling from a higher court.

1. A "fez" is a brimless, cone-shaped, flat-crowned hat that usually has a tassel, is usually made of red felt, and is worn especially by men in eastern Mediterranean countries. Webster's Third International Dictionary.

Again, on February 17, 1988, relator and his counsel appeared before Judge Dowd for purposes of arraignment. Relator was requested to remove his headdress or be found in contempt. Again he refused on religious grounds. Relator refused to testify to explain his religion unless his leaders were present wearing their headdress. The court found relator in contempt and fined him another $1,000 which again was stayed.

On February 18, 1988, relator filed his petition for prohibition alleging that relator is a member of the Temple, a religious organization, and in accordance with the tenets of his religion is required to wear his head covered with a fez. The petition alleged that relator faced the untenable alternatives of not appearing in court and forfeiting his bond, or appearing in court with his headdress because of his religious beliefs, and being held in contempt. The petition prayed that the respondents be prohibited from enforcing their orders of contempt, and for an order prohibiting respondents, as well as other judges of the "Associate Circuit Court" from enforcing any written or unwritten local rule which prohibits the wearing of "hats" to the extent that such rule forbids the wearing of a religious headdress in observance of religious beliefs, and prohibiting respondents from holding relator in contempt or fining relator for refusal to remove his fez.

On February 29, 1988, respondents filed a motion to dismiss, or in the alternative to remand the cause, to determine the issues of good faith and sincere religious belief for the reason that relator has failed to prove that his religious beliefs and the practice of wearing a fez are sufficiently religious in nature to warrant the protection of the First Amendment, or that such religious belief is sincere. The motion was overruled.

In due time respondents filed their joint answer to the petition.

On March 22, 1988, the American Jewish Congress and the American Civil Liberties Union of Eastern Missouri sought leave to file a brief as *amici curiae*. The motion was granted.

## II.

In this original proceeding, relator contends that while Missouri judges are given substantial discretion to maintain order, dignity and courtroom decorum, and may subject persons to deprivation of their liberty or rights granted by law, individuals have and possess the inalienable right to free exercise of religion subject only to the state's interests of preserving safety, peace and the good order of society. Relator also contends that the extraordinary remedy of prohibition is proper.

The brief of *amici* stresses that the contempt orders were issued in violation of the United States and Missouri constitutional protections of the free exercise of religion and thereby constitute an excess of jurisdiction. They seek a "vindication" of relator's right to free exercise of religion, and contend that respondents exceeded their jurisdiction by imposing orders of contempt against relator for his refusal to remove his fez—"an adornment of holy observance of his faith." *Amici* admit that the orderly administration of justice is an important, compelling interest of the state, and they recognize that adherents to any religious faith do not have a license to engage in irrational, disruptive conduct in the courtroom. They contend, however, that the respondents have not satisfied their heavy burden of showing that the wearing of a headdress impedes or obstructs the administration of justice or that it offends the dignity of the court.

## III.

We need not discuss the substantive issues in detail for, in these proceedings, the proper procedures were not meticulously followed. We deal here with an alleged direct criminal contempt, as distinguished from other forms of contempt. Contempts fall into two categories, civil and criminal. Criminal contempt's purpose is to protect

the dignity of the court and to protect the authority of its orders. Criminal contempt, from the earliest days of the common law, springs from the inherent power of the courts to protect the judicial system established by the people as the proper and official method of settling disputes. *Mechanic v. Gruensfelder,* 461 S.W.2d 298, 304 (Mo.App.1970); *Ex parte Ryan,* 607 S.W.2d 888, 890 (Mo.App.1980); *State ex rel. Girard v. Percich,* 557 S.W.2d 25, 36 (Mo.App.1977); *Osborne v. Purdome,* 244 S.W.2d 1005, 1012, 29 A.L.R.2d 1141 (Mo. banc 1951), *cert. den.,* 343 U.S. 953, 72 S.Ct. 1046, 96 L.Ed. 1354 (1952). Contempts are also logically arranged and divided into direct and constructive or indirect. *Ex parte Clark,* 208 Mo. 121, 106 S.W. 990, 996 (1907); *McMilian v. Rennau,* 619 S.W.2d 848, 851 (Mo.App.1981). A direct contempt is one that occurs in the view and presence of the court or so near thereto so as to interrupt the proceedings. *Ex parte Ryan, supra,* 607 S.W.2d at 890. If the judge certifies the conduct was seen or heard and committed in the actual presence of the judge, a direct criminal contempt may be punished summarily provided that certain procedures laid down in the Rules and statutes are followed. Criminal contempt, whether direct or constructive, embraces acts which are committed against the dignity of the law and the primary purpose of a sanction for criminal contempt is the vindication of public authority. *Curtis v. Tozer,* 374 S.W.2d 557, 568–69 (Mo. App.1964). The acts here, if contemptuous, are in this category.

In direct contempt the court is entitled to act summarily. Certain acts, which are disruptive, disorderly, contemptuous, and insolent, or which attempt to intimidate the trier of fact to influence a decision, committed in the presence of the court during its session, and in the immediate

view and presence of the court, and directly tending to interrupt the proceeding or to impair the respect due to its authority, are punishable as criminal contempt. *See* Dobbs, *Contempt of Court: A Survey,* 56 Cornell L.Rev., 183, 185 (1971); Dobbs, *Remedies,* 93 (1973).[2] Of course, courts, by the nature of the judicial office, have the inherent power and authority to punish for contempt. *State ex rel. Girard v. Percich, supra,* 557 S.W.2d at 36. That authority extends to protect, preserve and vindicate the power and dignity of the law. *Teefey v. Teefey,* 533 S.W.2d 563, 566 (Mo. banc 1976); *Ramsey v. Grayland,* 567 S.W. 2d 682, 686 (Mo.App.1978).

The Rules and statutes of Missouri define and establish the procedure for contempt. Section 476.110, R.S.Mo., 1986, provides that "[e]very court of record shall have the power to punish as for criminal contempt persons guilty of:

(1) Disorderly, contemptuous or insolent behavior committed during its session, in its immediate view and presence, and directly tending to interrupt its proceeding or to impair the respect due its authority;

(2) Any breach of the peace, noise or other disturbance directly tending to interrupt its proceedings;

(3) Willful disobedience of any process or order lawfully issued or made by it;

\*    \*    \*    \*    \*    \*

Section 476.130 provides that any contempt committed in the immediate view and presence of the court may be punished summarily.

The proper procedure for direct, criminal, summary contempt is outlined in the Supreme Court Rules, statutes and judicial decisions. The proper procedure is "absolutely necessary" to any punishment for contempt. *See* R. Byers & J. Swaney, Jr.,

---

**2.** Criminal direct contempt may be broadly described as any word or act done in court which obstructs or interferes with the due administration of justice or is calculated to do so. *See* 9 Halsbury's Laws of England, *Contempt of Court* at 4 (1974); *Re Cosgrove,* 1877, narrated by Fox,

*The Practice in Contempt of Court Cases,* 38 Law Q.Rev. 185 (1922) *See* Z. Chafee, Jr. and E. Re, *Cases on Equity,* 37 (1958). *See McMilian v. Rennau, supra,* 619 S.W.2d 848; *annot., Disruptive Conduct,* 29 A.L.R. 4th 659 (1984).

*Direct Contempt of Court—Missouri Procedure,* 32 J. of Mo. Bar 214 (1976).

Supreme Court Rule 36.01(a) deals with criminal contempt. That Rule provides that a criminal contempt "may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The judgment or order of contempt and the order of commitment shall recite the facts and shall be signed by the judge and entered of record."

Section 476.140, R.S.Mo., 1986, provides that whenever any person is committed for any contempt specified in Section 476.110, "the particular circumstances of his offense shall be set forth in the order or warrant of commitment." Section 476.120 provides that punishment for contempt may be by fine or imprisonment in the discretion of the court.

These procedures, rule and statutes have been construed in many appellate court decisions. As early as *Ex parte Stone,* 183 S.W. 1058 (Mo.1916) it is said that:

> It has long been settled law that in a contempt proceeding of this kind 'presumptions and intendments will not be indulged in order to sustain a conviction for contempt of court' ... and strict compliance with the statute must be exacted in cases such as this.

*Ex parte Stone, supra,* 183 S.W.2d at 1059.

The proper procedure for summary, direct, criminal contempt has been outlined and summarized by writers and judicial decisions. *See Byers & Swaney, supra,* 32 J. of Mo. Bar at 214. Such procedure is as follows:

(1) After determining that summary contempt is necessary, the court shall advise the contemnor as to exactly what act or conduct is contemptuous, and the contemnor should be asked whether he knows the act is contemptuous and if there is any reason or excuse for the act or conduct.

(2) If the court is satisfied that the act or conduct is contemptuous and there is no reasonable excuse for the conduct, the court is required to prepare two orders required by the Rule and statutes: (1) an order of contempt, and (2) an order or warrant of commitment or punishment.

(3) Both the order of contempt and the order of commitment or punishment must set forth the actual facts and not mere conclusions. Rule 36.01(a); *Ex parte Stone, supra; Ex parte Neal,* 507 S.W.2d 674, 679 (Mo.App.1974)—order of commitment; *Ex parte Brown,* 530 S.W. 2d 228 (Mo. banc 1975)—order of contempt insufficient even if order of commitment was sufficient.[3]

(4) The order or judgment of contempt should contain the judge's certification that he saw or heard the conduct, that it was committed in his presence and shall be signed.

(5) Once the order of contempt and order of commitment have been prepared, the court should read the account of the facts and circumstances constituting the contempt to the contemnor and afford him allocution, if he is to be imprisoned, find him in contempt and pronounce and impose the punishment.

Where there is no order or judgment of contempt reciting the precise facts, a contempt cannot be upheld. *Ex parte O'Brien,* 127 Mo. 477, 30 S.W. 158 (1895). Contempt is a specific offense and a fine imposed is a judgment. The order of commitment rests upon the order of contempt. *See Ex parte Brown, supra,* 530 S.W.2d at 230.

It has long been the rule that both an order of contempt and a warrant or order of commitment or punishment are essen-

---

**3.** An order of commitment is a warrant, order or process by which the court directs a ministerial officer to confine the person. *See* discussion in *Reardon v. Frace,* 126 S.W.2d 1167, 1168 (Mo. banc 1939)—relying on 2 Hawk P.C. 119 ch. 16 and *People ex rel. Allen v. Hagan,* 170 N.Y. 46, 62 N.E. 1086, 1087 (1902). The fine imposed is a judgment. *Ex parte O'Brien,* 127 Mo. 477, 30 S.W. 158, 160 (1895).

tial. Furthermore, both the court's order or judgment of contempt and the order or warrant of commitment must recite the facts and circumstances constituting the offense and " 'not simply the legal conclusions of the court.' " *G v. Souder*, 305 S.W.2d 883, 887 [(Mo.App.1957)]; *Ex parte Neal*, 507 S.W.2d at 679–80; *Ex parte Ryan*, *supra*, 607 S.W.2d at 892. The Supreme Court in *Ex parte Brown*, *supra*, 530 S.W.2d at 231 emphatically states:

> We hold *again* that in contempt proceedings, whether direct or indirect, the facts and circumstances constituting the offense, not mere legal conclusions, must be recited with particularity in *both* the judgment of contempt and the order of commitment.[4] (Emphasis added).

These rules are salutory, for as our Supreme Court has stated:

> It is suggested the rule applied is a strict one. It is designedly so. When a court summarily deprives a citizen of his liberty *or property*, it is right to require of it exact obedience to the demand of the statute for a statement of 'the particular circumstances of his offense,' and in such circumstances any departure from our heretofore uniform course in exacting literal and full compliance therewith should be to disobey the legislative mandate and possibly endanger individual liberty. (Emphasis added).

*Ex parte Stone*, *supra*, 183 S.W. at 1059 quoted in *Ex parte Neal*, *supra*, 507 S.W. 2d at 680.

■ Although it is held in numerous cases that a warrant of commitment is essential for confinement, we also believe that a warrant or order of commitment is necessary when the contemnor is sentenced to confinement and placed on bond and may purge the contempt by satisfying the fine. *Cf., Ex parte Stone*, *supra*, 183 S.W. 1058.

These Rules, statutes and judicial decisions outline the proper procedure to be followed in a direct, criminal contempt case.

■ In these proceedings, the citations for contempt by respondents did not meticulously follow these essential rules and procedures, so that we are compelled to make our preliminary order permanent.

As to respondent, Judge Autrey, there was no "order of contempt" sentencing relator to two days in confinement, or to be purged of contempt upon paying the amount of the bond. Neither was there a warrant of commitment as the rules and decisions require. There was only a belated "Findings of Fact in Order of Contempt" delivered sometime after relator's appearance in court.

In the appearances before respondent, Judge Dowd, there was no formal order of contempt stating the facts in detail. Relator was orally cited for contempt on both occasions at the hearings.

Under these circumstances, the proper procedure was not followed so that our permanent writ must issue. *Ex parte Brown*, *supra*, 530 S.W.2d at 231.

### IV.

■ In this unusual proceeding we also note, recognize and adhere to the following basic, traditional, historical, or constitutional principles: (1) a judge has the inherent authority, right and duty to maintain dignity, decorum and order in the courtroom and to reasonably control the manner of dress, manners and conduct in the courtroom for the good of the administration of justice, (2) under the free exercise clauses of the United States and Missouri constitutions, every person is guaranteed the privilege of freely exercising that religion, (3) a person claiming an infringement of the right to free exercise of religion, has the burden initially to show that there is a "religion" within the constitutional meaning of religion; that the conduct infringed is truly "religious" in nature, and while it is inap-

---

4. The order cannot be *nunc pro tunc*. *Ex parte* *Neal, supra,* 507 S.W.2d 674.

propriate to question the verity of a religious belief, the sincerity of the religious belief may be examined. To determine these questions of whether there is a religion in the constitutional sense, that the conduct is truly religious and the sincerity of the religious belief, a person claiming the free exercise of religion is entitled to a threshhold hearing to offer testimony and evidence thereon. *Cf., United States v. Seeger,* 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); *Intern. Soc. for Krishna, Etc. v. Barber,* 650 F.2d 430 (2nd Cir. 1981); *Lyng v. Northwest Indian Cemetery Protective Assn.,* — U.S. —, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988), (4) while a defendant in a criminal case is constitutionally entitled to a public trial, the right is that of the accused. No particular group is entitled to witness the proceedings. In the discretion of the trial court, spectators may be excluded because of various reasons including preventing courtroom disturbance or overcrowding. *See* 21 Am.Jur.2d, *Criminal Law,* §§ 666, 669 (1981); *annot.,* 4 L.Ed.2d 2128 (1960), and (5) if a person claiming free exercise of religion is given a reasonably full opportunity to develop and prove, or if judicial notice may be taken, that the religion is truly a religion within the meaning of constitutional principles,[5] and the act or conduct in the courtroom is an essential tenet or essential part of that religion, then the state bears a heavy burden to establish that the state's interest in maintaining dignity and decorum would override the interest of the free exercise of religion which would threaten public peace, order and safety. *See McMillan v. State,* 258 Md. 147, 265 A.2d 453 (1970); *In re Palmer,* 120 R.I. 250, 386 A.2d 1112 (1978); *Close–It Enterprises v. Weinberger,* 64 A.D.2d 686, 407 N.Y.S.2d 587 (1978); *annot.,* 73 A.L.R. 3d 353 (1976). A person may not be cited for contempt merely because he is a member of an organization or religious entity. A contemptuous personal act or conduct is necessary.

These principles properly balance the two interests—that of the state in the administration of justice and that of the constitutional right to the free exercise of religion.

## V.

Prohibition is the proper remedy. For refusal to remove his fez, relator was sentenced to two days in jail and placed on $250.00 bond by respondent Autrey, and fined by respondent Dowd. He was never confined.

■ For criminal contempt there is no right to appeal from a judgment or order. *State v. Norman,* 193 S.W.2d 391 (Mo.App. 1946); *Ex parte Howell,* 273 Mo. 96, 200 S.W. 65, 68 (1918); *Ex parte Clark, supra,* 106 S.W. 990, [9]; *In re Randolph,* 474 S.W.2d 36 (Mo.App.1971); *Curtis v. Tozer, supra,* 374 S.W.2d 557; *State ex rel. Girard v. Percich, supra,* 557 S.W.2d at 36. There is no provision or statute allowing an appeal from a purely criminal contempt. The proper method to test the validity of such a judgment is by the writ of habeas corpus. *Curtis v. Tozer, supra,* 374 S.W. 2d 557; *Mechanic v. Gruensfelder, supra,* 461 S.W.2d 298; *Osborne v. Purdome,* 244 S.W.2d 1005 (Mo. banc 1951), *cert. den.,* 343 U.S. 953, 72 S.Ct. 1046, 96 L.Ed. 1354 (1952); *State ex rel. Girard v. Percich, supra,* 557 S.W.2d at 36.

■ Since the relator was never incarcerated, but was punished by a fine and sentence, and placed on bond, habeas corpus is not the appropriate remedy and prohibition will lie. It has been held that, in a proper case, prohibition is an appropriate remedy in contempt proceedings. *See State ex rel. Jarboe v. Holt,* 444 S.W.2d 857, 859 (Mo. banc 1969); *State ex rel. Thompson v. Rutledge,* 332 Mo. 603, 59 S.W.2d 641, 642 (Mo. banc 1933).

The prime purpose of the writ of prohibition is to prevent a usurpation of judicial

---

5. *See Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 1793, 1797, 10 L.Ed.2d 965 (1963) and *Intern. Soc. for Krishna, Etc. v. Barber, supra,*

*Cf., Faheem–El v. Lane,* 657 F.Supp. 638 (C.D.Ill. 1986); *Mo. Church of Scientology v. State Tax Comm.,* 560 S.W.2d 837 (Mo. banc 1978).

power, and not to provide a remedy for all legal difficulties or to serve as a substitute for appeal. The essential function of the writ of prohibition is to confine judicial activities within the limits of cognizable authority, preventing actions in want of or in excess of the court's jurisdiction. *State ex rel. Eggers v. Enright,* 609 S.W.2d 381, 382 (Mo. banc 1981). Two elements must occur simultaneously for the issuance of the writ—excess of jurisdiction and lack of an adequate remedy by appeal. *State ex rel. Gray v. O'Leary,* 602 S.W.2d 473, 476 (Mo.App.1980). Although prohibition is not a writ of right, and depends upon the circumstances, measured by the sound discretion of the court to which application is made, it is properly granted when there is a judicial act in excess of jurisdiction. *State ex rel. Jarboe v. Holt, supra,* 444 S.W.2d at 859.

■ Since the relator was never physically in custody, but was fined by respondent, Dowd, the fine being stayed pending the determination of this writ, and was permitted by Judge Autrey to purge himself by paying the amount of the bond, $250.00, we hold that under such circumstances in a direct criminal contempt situation, that prohibition is a proper procedural remedy.

The preliminary order heretofore issued is hereby made permanent.

CRANDALL, P.J., and GARY M. GAERTNER, J., concur.

## ON MOTION FOR REHEARING

SIMEONE, Senior Judge.

Within the time limited by the Rules, respondents have filed a motion for rehearing or in the alternative to transfer the cause to the Supreme Court. In their motion for rehearing, respondents allege that the opinion handed down May 10, 1988 overlooks or misinterprets certain matters of law and fact because (1) it assumes that there were no documents constituting the orders of contempt or warrants of commit-

ment and (2) an order of commitment is unnecessary when contemnor is assessed a fine rather than confined.

At the time the original opinion was filed, neither party furnished the court with certain exhibits which had some bearing on the principles stated in the opinion. After the opinion was handed down the relator filed handwritten orders of contempt entered by each of the respondents. We have reviewed these additional exhibits. Although contrary to some of the facts stated in the opinion, these exhibits—handwritten orders of contempt—do not substantially change the result of the opinion nor satisfy all of the procedures outlined therein.

The motion for rehearing or in the alternative to transfer to the Supreme Court is denied.

CRANDALL, P.J., concurs.

GARY M. GAERTNER, J., dissents on denying motion for rehearing.