Carlton *vs.* Carlton.

---

J. M. B. CARLTON, plaintiff in error, *vs.* ANNIE E. CARLTON, defendant in error.

1. Where in a libel for divorce, the Judge, after an examination in the cause and circumstances of the separation, and of the ability and unwillingness of the husband to pay, grants temporary alimony, this Court will not control his discretion, unless that discretion be abused.
2. In determining the amount of the alimony, the Court may look into the property controlled by the husband, his ability to make an income, and determine from all the circumstances what is a reasonable sum to be paid as temporary alimony.
3. An attachment for contempt, in refusing to obey an order of the Judge to pay a certain amount of temporary alimony, is not prohibited by that clause of the Constitution of 1868, abolishing imprisonment for

debt. And where the Judge has fully examined the ability of the party to pay, and has reason to anticipate his disobedience to the order, he may direct that if the money is not paid attachment for contempt shall issue.

Alimony. Imprisonment for Debt. Contempt. Before Judge HOPKINS. Fulton County. Chambers. July, 1871.

Said parties married in March, 1869. In July, 1870, she sued him for a divorce, a *vinculo matrimonii*. The ground was cruel treatment. She appended to her libel a schedule of his real property, valued at $5,600 00, and of personalty, valued at about $250 00. In August, 1870, Judge Lochrane, then presiding, granted her $30 00 per month from the 1st of June, 1870, the date of separation, for temporary alimony, and $150 00 cash, as counsel fees. He took the matter to the Supreme Court for review. There it was dismissed because prematurely brought up. Meanwhile she filed a bill to enjoin him from conveying away certain of said realty and to set aside a conveyance of part of it already made to his brother.

Failing to pay, Carleton was called on, by Judge Hopkins, then presiding, to show cause why he should not be attached for contempt. He answered, setting forth his failure to get a hearing in the Supreme Court, averring that he had no property, was a laborer at $25 00 per month, and that his wife was not, under the circumstances of the separation, entitled to any alimony, and prayed a modification of Judge Lochrane's order. The cause was heard in July, 1871.

Mrs. Carleton showed that she was living with her father, who was old, had a large family and but little means; that she had syphilis, contracted prior to her separation, (of which she was ignorant when she sued for the divorce), that it cost her $28 00 per month to have medical treatment therefor. She showed that the rental of the realty in the schedule was nearly $1,000 00 per *annum.* She testified to the alleged acts of personal violence upon her by her husband.

Her brother testified that he heard her husband say, before the separation, that he would sell his property or fix it so that she could get none of it, and then leave her, and that, after the separation, he heard defendant's brother say that she need not sue, for the defendant had so fixed his property that she could get none of it.    It was shown that defendant was a good business man, and that he ought to command $1,200 00 *per annum* as a clerk.

On the contrary, defendant and his brother testified that so much of the realty which was conveyed to his brother was so conveyed six months prior to the separation, *bona fide*, for valuable consideration, and showed how it was paid for.  As to the other lots, he showed that they belonged to his former wife, and testified that prior to his marriage with this former wife he agreed verbally with her that all *that* property should ever be held by him in trust for her and her children; and she left a son, still surviving; he had always given it in for taxation as trust property, and never claimed it as his own. He testified that this suit and the talk about him had rendered him unable to get work, and that he had been employed but part of his time, and first at $50 00 per month and then at $25 00 per month.    He said it took all of this to support himself.    The evidence as to what was necessary to support his wife ranged from $12 00 to $30 00 per month.    He said that her counsel had sued out a *fi. fa.* upon the former order and it was levied upon part of said realty, but it did not belong to him.    He denied ever having sexual intercourse with any other woman during his cohabitation with her; denied ever having any venereal disease; denied having stated what her brother had sworn to, and stated that he had never acted cruelly towards his wife, but had been kind and indulgent to her, etc.    And an affidavit of their negro servant supported this last assertion.    The Chancellor ordered him to pay, within five days, $75 00 for attorney's fees, $100 00 for past alimony, and $20 00 per month for future, temporary alimony, and upon failure to comply with any part of this order that he be committed to jail.

The law having been changed, he brought this up for review. He averred that the Chancellor erred in fixing said sums, because he had demonstrated his inability to pay alimony and attorney's fees, and in ordering him to jail if he failed to comply, especially when a *fi. fa.* had been issued to collect said original amount and was levied upon property.

GARTRELL & STEPHENS; THRASHER & THRASHER, for plaintiff in error.

MYNATT & DELL, for defendant. This parol agreement does not save the defendant: R. Code, sections 1944, 1765, 1771, 2242.

McCAY, Judge.

1. The granting of temporary alimony in a divorce case is specially in the discretion of the Judge. The statute, Code, sections 1733, 1736, clothes him with power to examine into the whole matter, and to grant such alimony or to refuse, accordingly, as, from the circumstances of the separation and the ability of the parties, he shall judge proper. His judgment is not even final, but is, at any time, open to modification and re-examination by him. The nature, too, of the case demands that the affair shall be specially in his control, since the very daily sustenance of the wife is involved in its prompt adjudication. If subject, for slight causes, to review in this Court, it would be of little value, since, in its very nature, it is only temporary, and the very *interregnum* it is intended to cover, would be frittered away in litigation over it. For these reasons we feel it to be not only the law, but public policy, that this Court shall only interfere when there has been some clear abuse of power by the Judge.

2. We do not think this is such a case. The conduct of the husband has, as we think, been such as to call for but little sympathy; nor does the showing he makes at all excuse either his conduct towards his wife, or his failure,

promptly, to obey the former order of the Court.   Nor does his extraordinary devotion to the parol contract with his first wife strike us as worthy of nearly so much consideration as his counsel seem to think.   We cannot but suspect that the pressure of present circumstances has much to do with this conscientious adherence to his promises, and we do not think the Judge erred in not giving it full consideration.   We do not decide upon the validity of this parol marriage settlement, nor determine how far the present wife stands upon the footing of any other person who has dealt with the husband, as regards the effect of a parol agreement of this character.   We simply say that the Judge has not, in our judgment, by his order, infringed upon any of the legal rights of the child of the first wife, and that there is sufficient in the whole case to justify the alimony granted.

3. Nor do we think section 18 of Article I., of the Constitution of 1868, abolishing imprisonment for debt, takes away the power of the Judge to commit to jail for contempt. Indeed, section 17 of the same Article, seems to imply the contrary, since it makes it the duty of the General Assembly to limit the power of the Courts to punish for contempts. We do not intend to say, that simply because a debt is adjudged by a decree in chancery, instead of by a judgment at law, it may therefore be enforced by imprisonment.   The imprisonment must be clearly for the contempt of the process of the Court, and be of one who is able and unwilling to obey the order of the Court.   It must be remembered also, that the imprisonment by a Judge for contempt, is always conditional, and is at his discretion, and may, at any time, by the same discretion, be discharged.   And very clearly, it ought never to be resorted to, except as a penal process, founded on the unwillingness of the. party to obey. The moment it appears that there is *inability*, it would clearly be the duty of the Judge to discharge the party, since it is only the contempt, the disobedience upon which the power rests.   Ordinarily, it would be improper to include in the

order for alimony, the alternative order for imprisonment, on failure, since it is not to be presumed that a contempt will ensue. In this, case, however, we think it was justified. The defendant below had refused to obey a former order, and his whole conduct indicated very clearly that nothing but the stern order of the Chancellor to commit him on his disobedience, would bring him to the performance of what is his clear duty in the premises.

Judgment affirmed.