Ex PARTE ROBERT T. FULLER.—50 S. W. (2d) 654.

Court en Banc, May 11, 1932.

*J. Roy Smith* for petitioner.

372

*John S. Wright* and *Hoyt A. Poorman* for respondent.

FRANK, J.—Petitioner was committed to the common jail of Jackson County by the Circuit Court of said county for failure to comply with an order made by said court in the case of Radio Manufacturers' Corporation v. Robert T. Fuller and Grace W. Fuller, transacting business under the name of Gate City Radio Company. He invokes our writ of *habeas corpus* and asks to be restored to his liberty on the ground that his imprisonment is illegal and unlawful.

Our writ issued, and the sheriff of said county in obedience thereto, made his return showing that he held petitioner in custody by virtue of an order and judgment of the circuit court, a copy of which judgment is attached to the sheriff's return, and thereupon he brought the body of the petitioner before this court where a hearing was had and the cause submitted for final disposition.

It appears that the Radio Manufacturers' Corporation by written contract consigned to petitioner, Robert T. Fuller and his wife, Grace W. Fuller, a large number of radios and other merchandise which petitioner and his wife agreed to sell at retail, and from proceeds of sales made remit to Radio Manufacturers' Corporation the agreed cost price of the radios and merchandise sold, as stipulated in said consignment contract. It further appears that petitioner and his wife sold the consigned merchandise for cash but failed to remit to Radio Manufacturers' Corporation the cost thereof, whereupon the Radio Manufacturers' Corporation brought suit in Circuit Court of Jackson County against petitioner and his wife asking for an accounting, the appointment of a receiver and other relief. The circuit court appointed a receiver and made an order directing petitioner and his wife to forthwith deliver to the receiver all con-

signed merchandise on hand and the proceeds of all such merchandise as had been sold, and render to plaintiff within seven days from the date of said order, a full and complete account in writing of the use, sale, distribution or other disposition of all merchandise theretofore consigned to them, and also of the proceeds derived from any sale or other disposition of any of such consigned property. The receiver demanded of petitioner and his wife that they deliver to him all consigned property on hand and the proceeds of such as had been sold. Upon their failure to deliver to the receiver the proceeds of the sale of the property, the circuit court cited them to appear on a day named and show cause why they should not be adjudged guilty of contempt in failing to obey the order of the court directing them to deliver the proceeds of the sale of said property to the receiver and render a written account of the disposition of said property to plaintiff as specified in said order. A hearing was had on the order to show cause and petitioner was adjudged guilty of contempt and committed to the county jail there to remain until he complied with said order.

At the hearing on the order to show cause, petitioner testified that he had on hand six radio sets and two empty cabinets which he delivered to the receiver. There was no evidence that he had any of the consigned property on hand except that delivered to the receiver. Petitioner further testified that all of the consigned property except that delivered to the receiver had been sold and the money received therefor had been expended by him in the payment of sales commissions, advertising, operating expenses and living expenses, and he was unable to comply with that part of the court's order directing him to deliver the proceeds of the sale of the property to the receiver because he did not have the money. There was not sufficient substantial evidence to authorize a finding that he did have the money. Evidently the circuit court entertained that view of the evidence because it did not find that petitioner had the proceeds of the sale in his possession or under his control. The findings of the court in that behalf is as follows:

"That said Robert T. Fuller and Grace W. Fuller sold all of said 340 radios, received therefor cash in excess of $6500, and at the time said order dated January 25, 1932, was made and entered, either had and have had at all times thereafter, and now have in their possession or under their control not less than $6,151.80, of the proceeds of the sale of the said property consigned to them by plaintiff, or have wrongfully, illegally and contumaciously misapplied, misappropriated and converted said $6,151.80 in whole or in part to their own use; and that said Robert T. Fuller and Grace W. Fuller, and each of them, have wilfully, intentionally, and contumaciously refused and still continue wilfully, intentionally and

contumaciously refuse to obey said order made by this court on January 25, 1932."

██ It thus appears that the court did not find that the petitioner had in his possession the proceeds of the sale of the consigned property. What the court did find was that he either had such proceeds in his possession or under his control, or he had wrongfully, illegally and contumaciously misapplied, misappropriated and converted same, in whole or in part to his own use. The court had no authority to adjudge petitioner guilty of contempt for failing to obey its order by delivering the money representing the proceeds of the sale of the property to the receiver on the ground that he contumaciously refused to do so, without first finding that petitioner had the money in his possession or under his control, and was, therefore, in a position to comply with the order. The law will not permit a court to order a party to do that which he has no power to do, then commit him to jail, there to remain until he performs the impossible. The question in this case is not whether petitioner has wrongfully appropriated to his own use, money or property belonging to another. ██ If he has done so, the criminal laws provide adequate punishment for such conduct. Our view of the law which should govern this case is well stated by the Supreme Court of Arkansas in Dodson v. Butler, reported in 142 S. W. 503, 39 L. R. A. (N. S.) 1100, 1103. That court said:

"As is said in the case of Meeks v. State, 80 Ark. 579, 98 S. W. 378: 'According to the decided weight of authority, an order directing the payment of specific funds adjudged to be in the possession or control of the person at the time of the trial may be enforced by contempt proceeding, and punishment may be inflicted for disobedience of the order. [See also Hand v. Haughland, 87 Ark. 105, 112 S. W. 184.]

"But this power to punish, as in cases of contempt for disobedience of such order of restitution, only applies where the court has first found that the specific property, or the specific funds, are in the possession or under the control of the person ordered to make restitution thereof at the time of the trial. [Coughlin v. Ehlert, 39 Mo. 285; Clements v. Tillman, 79 Ga. 451, 11 Am. St. Rep. 441, 5 S. E. 194.] A party may be put in contempt for disobeying a lawful order of court for the performance of acts within his power. But where such order is for the production of specific property or specific funds, before it can be said that he is in contempt of the court in failing to comply with its order to produce or restore the same, he must be able and unwilling to obey the order. When such judgment creditor shows that his failure to make restitution is not attributable to mere contumacy, but is due to an inability to comply with the order, for the reason that he has not the possession and

control of the specific funds ordered restored, then he purges himself of any contempt for which he can be legally punished. [Jenkins v. State, 60 Neb. 205, 82 N. W. 622.]''

Speaking to a like question in Register v. The State of Minnesota, 8 Minn. 214, 217, that court said:

''The case does not show a contempt of the court by the defendant. It does not appear that it was in the power of the defendant to perform the act required of him, save by the legal presumption that the trust fund remained in his hands, which presumption is fairly overcome by the testimony of the defendant. The fraud the defendant may have been guilty of in disposing of the trust fund, if such was the case, cannot be reached and punished by proceedings for contempt, in not obeying the order to pay it over to the receiver. These proceedings can only extend to punishing the defendant for contumaciously refusing to obey the order. We think the defendant fairly purges himself of the charge of disobedience, by showing inability to comply.

''There is an adequate remedy for improperly disposing of a trust fund by a trustee, or person acting in a fiduciary capacity. The party has mistaken his remedy if he intended to accomplish that end by proceeding in contempt.''

In Ex parte Cohen, 6 Cal. 318, it appears that Cohen was held under a commitment directing that he be imprisoned until he complied with a certain order of court requiring him to deliver to H. M. Naglee, a receiver appointed by said court, all the books, papers, money and property in his hands belonging to Adams & Co. In disposing of Cohen's application for release on writ of *habeas corpus,* that court said:

''In addition to the return of the officer, the petitioner produces as evidence on the hearing of his application, a record of the proceedings in the court below on his application to be discharged from imprisonment. From this record, it appears that Cohen filed his affidavit in the court below, setting out a compliance with said order as far as he was able. Certain interrogatories were propounded to him, under the order of the court, from the answers to which, with the affidavits and statement of accused on file, the court decreed, 'that said Cohen had not paid over to said receiver, according to the order of the court, all the moneys received by him as receiver in this action, but had retained a portion of said moneys for his disbursements and compensation; the court ordered and decided that said Cohen could not be the judge of his own compensation and disbursements, but they must be submitted, and passed upon by the court and allowed, to entitle him to take them; and in order to be discharged he must first pay over all said moneys received by him

as receiver—have his accounts passed upon and allowed, and pay over the balance found in his hands.'

"By the affidavit of Cohen, which is not contradicted, it appears that the disbursements charged, were made by him in the course of his receivership, and that the money claimed by him as compensation had been used about his own business, and that he had not so much money in his hands, and was, therefore, unable to comply with the order of the court.

"Under our statutes, the power of a court to punish for a contempt is limited to a fine of five hundred dollars and imprisonment for five days, except when the contempt consists in the omission to perform an act which is yet in the power of a person to perform, in which case he may be imprisoned till he have performed it. [Secs. 488 and 489, Prac. Act.]

"In this case, the court does not find that it was in the power of Cohen to comply with the order; and his affidavit, which was not contradicted, shows that it was not.

"This being the case, we are satisfied that the court exceeded its jurisdiction in making an order, which, from the record alluded to, was equivalent to a sentence of imprisonment for life."

In Clements v. Tillman, 79 Ga. 451, 455, that court quoted approvingly from Carlton v. Carlton, 44 Ga. 220, the following:

" 'We do not intend to say that, simply because a debt is adjudged by a decree in chancery instead of by a judgment of law, it may therefore be enforced by imprisonment. The imprisonment must be clearly for the contempt of the process of the court, and be of one who is able and unwilling to obey the order of the court. . . . It ought never to be resorted to except as a penal process, founded on the unwillingness of the party to obey. The moment it appears that there is inability, it would clearly be the duty of the judge to discharge the party.' etc."

In Walters v. Reinhoudt, 130 Misc. 745, 225 N. Y. Supp. 123, affirmed in 224 App. Div. 695, 228 N. Y. Supp. 917, it appeared that judgment was had against X for certain funds converted and dissipated by him. On motion to punish X for contempt for not paying over the money as directed by the judgment, the court held that as it was not shown that X had possession of the fund when it was declared a trust fund or when judgment was entered, he could not be punished for contempt for failure to do the impossible.

Numerous cases from other jurisdictions in line with the cases to which we have called attention might be cited. Our attention has not been called to any Missouri cases involving facts similar to those in the case at bar, but this court has indicated that its views are in line with the cases above cited. In Roberts v. Stoner, 18 Mo. 482, 484, this court said: "When the decree is for the performance

of acts within the power of a party, he may be compelled by sequestration. Such a process may have been proper, if it had been shown that Stoner had the money in his possession and refused to deliver it up." In the case of Coughlin v. Ehlert, 39 Mo. 285, 286, this court dealt with the question as to whether or not a husband could be adjudged in contempt for failure to pay money which the court had ordered to be paid as alimony. We there held that the refusal to pay such alimony, was the refusal to pay a debt, for which the husband could not be imprisoned. After so holding, we further said:

"We do not mean to say that a party may not be put in contempt for disobeying a decree for the performance of acts which are within his power and which the court may properly order to be done. If it were shown, for instance, that the party had in his possession a certain specific sum of money, or other things, which he refused to deliver up under the order of the court for any purpose, it may very well be that his disobedience would be a contempt for which he might lawfully be imprisoned."

The court did not find that petitioner had the money in his possession or under his control, or that he was able to comply with the order. In the absence of such a finding, the court had no authority to adjudge him guilty of contempt on the ground that he wilfully and contumaciously refused to comply with the order, by delivering the money to the receiver.

■ However, we do not hold that petitioner's inability to comply with the order would excuse him if such inability was the result of his own voluntary act in disposing of the money with the intention of placing himself in a position to avoid compliance with the order. In other words, if the court had found on substantial evidence, that petitioner had the proceeds of the sale of the property in his possession or under his control at the time the order directing him to deliver same to the receiver was made, or that he so held the money prior to the making of the order, but disposed of or converted it in anticipation of the order and to avoid compliance therewith, such a finding of facts would have authorized the court's conclusion that petitioner wrongfully, illegally and contumaciously misapplied, misappropriated and converted same to his own use, but the court made no such finding. There is, therefore, no basis for the court's conclusion that petitioner contumaciously appropriated and converted the money. [McKissack v. Voorhees, 119. Ala. 105, 24 So. 523.]

■ In contempt cases the facts and circumstances constituting the contempt should be recited in the judgment. This court en banc has spoken on that subject. In Ex parte Creasy, 243 Mo. 697, 704, 148 S. W. 914, we said:

" 'This fact and the circumstances should have been stated in the order of commitment and judgment. In contempt cases it is facts and circumstances which go to make up the contempt which must be set forth and not the legal conclusions of the judge as to what are the facts and circumstances.' "

Again at page 707 this same case says:

" 'The Constitution guards the liberty of the felon with the same eagle eye that it does the infant and pure girl. In each when unlawful detention is charged, the facts of that detention must be laid bare. In contempt proceedings which result in detention of one's liberty, the law says that the facts and circumstances of the contumacious acts must be spread of record in the commitment or order of commitment. Such was not done here and the petitioner's rights have been invaded. . . .' "

In the instant case, the judgment does not find that petitioner had the money in his possession or under his control at the time he was ordered to deliver it to the receiver. Neither does it find that petitioner disposed of the money after the order was made, or in anticipation that it would be made, intending thereby to evade compliance with the order. In other words, the judgment does not recite the facts going to make up the contempt, but the court concludes that petitioner's failure to deliver the money to the receiver was contumacious without making any finding of facts upon which to base such a conclusion. It may be that petitioner wilfully and unlawfully converted the money in question to his own use, but wilful and unlawful conversion of money is not necessarily contempt of court. Because of the court's failure to find any fact or facts to support its conclusion that petitioner's appropriation of the money to his own use was in contempt of the court's order, the judgment is wholly insufficient to support a commitment for contempt.

This brings us to the next branch of the case, and that is whether the facts of record authorized petitioner's commitment for contempt on the ground that he contumaciously refused to deliver to plaintiff an account in writing of the sale or other disposition of said property or of the proceeds thereof.

At the hearing on the order to show cause, petitioner testified that he turned to plaintiff all of the records he had covering the consigned property. These records were introduced in evidence. The court made no finding of any kind concerning these records—did not find whether such records constituted a complete or incomplete report of the sale or other disposition of said property and the proceeds thereof, and did not find that petitioner was in possession of data from which he could make any report different from that which he did make. If petitioner made an honest effort to comply

with the order of the court, by making the best report he could make, he should not be adjudged guilty of contempt for failing to make the report. Before the court would be authorized to find petitioner guilty of contempt, it would have to make a finding that he was able but failed or refused to make the report called for in the court's order. The judgment shows that the court concluded that petitioner wilfully failed, neglected and refused to render to plaintiff an account in writing, without making any finding of facts that would authorize such a conclusion. The judgment find no facts which would constitute contempt, and for that reason it is void.

By express terms of the consignment contract plaintiff held the merchandise in question as bailee or trustee. Radio Manufacturers' Corporation is opposing petitioner's discharge and contends that as he was in a position of trust, his answer of inability to pay did not excuse the contempt, because his inability arose from his own unlawful conversion of the trust fund. Cases from other jurisdictions are cited in support of this contention. No useful purpose would be served by lengthening this opinion with a review of these cases, because if they support the contention here made, we would not follow them. We are convinced that the cases which we have cited announce the rule which should govern this case.

For the reasons stated, the prisoner should be discharged. It is so ordered. All concur.