## WHITE v. HELD.

No. 28891.

St. Louis Court of Appeals.

Missouri.

June 15, 1954.

H. L. C. Weier, Hillsboro, for appellant.

Dearing & Matthes and M. C. Matthes, Hillsboro, for respondent.

WOLFE, Commissioner.

This is an appeal from a judgment finding the appellant in contempt of court for failing and refusing to comply with a decree of the court. The decree which the appellant was charged with refusing to obey is a modified decree of divorce directing that appellant's former husband should have temporary custody of their minor child from June 1 to August 30 of each year. The decree directs the manner in which the child is to be placed in the father's custody and when appellant refused to comply with it she was cited for contempt. Upon finding her in contempt the court sentenced her to the county jail until she should deliver the child to her former husband.

Betty Held White was formerly Mrs. Betty Held, the wife of L. B. Held. In January of 1949 she was granted a divorce and was awarded custody of their infant daughter, subject to the right of Held to visit with the child. In March of 1952 Held filed a motion to modify the decree and this was heard on October 2, 1952. In the same month that the motion to modify was filed Betty Held married a man named White and while the motion was pending she moved to the state of Washington where she resided until January, 1953. She was represented at the hearing on the motion by counsel. The motion to modify was sustained and the court entered the following order:

"Comes now L. B. Held in person and his attorney, also comes Betty

Ruth Held by her attorney but not in person. Thereafter the motion to modify was heard by the court upon the evidence adduced to the Court. Upon the pleadings and evidence adduced the Court finds that the decree offered in evidence should be modified. Wherefore this Court rules that on June 1 through August 30, 1953 the said L. B. Held is to have the temporary custody of the said Drena Kaye Held and at the same time each succeeding year thereafter so long as said child is a ward of this Court. Said child to be delivered to L. B. Held on such day at Jefferson County Welfare Office at Crystal City, Mo., at the hour of ten o'clock A. M. and the return at the same place at hour ten o'clock A. M. the 31st day of August of such years. Further the Court on the evidence adduced to the court increases the amount of weekly payments that are being made to the plaintiff by the defendant L. B. Held from $6.00 per week to the amount of $8.50 per week until further order of this Court, if any, said amount would not be payable when said child is in the custody of L. B. Held, provided however that the child's wearing apparel is to be at all such times good and sufficient, that is when she arrives and when she is taken back by the said L. B. Held. The Court sustains motion for attorney fees on the part of Betty Ruth Held and allows the sum of $85.00."

The appellant was informed by her lawyer that the decree had been modified and he told her the terms of the modification.

In January of 1953 Betty Held White returned to the home of her parents in Herculaneum, Missouri, and she and her child lived there, as White, who was in the Army, had been sent to Germany.

On June 1, 1953, Held went to the Jefferson County Welfare Office but his child was not delivered there. He consulted his lawyer and after talking to the appellant's lawyer agreed to wait forty-eight hours. On June 3, he went back to the Jefferson County Welfare Office with the same results; the child was not there. On June 12, he filed with the circuit court a petition for an order directed to Betty Held White and her parents to show cause why they should not be punished for contempt of court.

The order to show cause was issued and the appellant filed her return which contained an allegation that Held had failed to make the payments of $8.50 weekly required of him under the decree of October 2, 1952. It also alleged that the decree did not direct the appellant to do anything and that no copy of it had ever been served upon her.

There was a partial hearing of the matter on June 29 when the parents of the appellant were present but appellant's counsel stated that she was prevented by illness from attending court at that time. After hearing some testimony the matter was adjourned until July 13 and in the interim Betty Held White was served with a certified copy of the decree. After a further partial hearing the cause was passed to July 24 for the taking of additional testimony.

Held testified about his unsuccessful efforts to obtain custody of the child for the period mentioned in the decree, and stated that he was then and had been willing at all times to pay the amounts awarded for the child's support but that checks mailed to his wife came back with a notation on the envelopes that the mail had been refused. Three of these envelopes and checks were offered in evidence.

The appellant testified that she had undergone an operation and that while she was in the hospital she directed her parents not to turn over the child to anyone under any circumstances. She stated that after her return from the hospital she had refused the request of a deputy sheriff to take the child to the welfare office. She said that she had been informed by her counsel that the decree had been modified upon Held's motion, but when she got the information she was in the state of Washington. So she went to a local lawyer and was informed by him that she would not have to

comply with the order of the court. She also testified that she had received no support money from Held and when shown the returned envelopes in which checks had been sent to her she said that they were returned at her direction as she did not wish to receive any letters from Held. She said, however, that if Held paid all of the amount due under the court's decree she would not comply with the decree, because she did not think Held's home was a fit place to take the child. She stated on several occasions throughout the testimony that she had no intention of complying with the decree of the court.

■ It is contended that the court should have refused to consider the citation for contempt because Held had not made the payments directed by the decree and that under the general principles of equity he who seeks equitable relief must do equity. A discussion of the application of the maxim, "He who seeks equity must do equity", as it may relate to the situation before us, would serve no useful purpose, for it is clear from the evidence that Held was prevented by the appellant from doing the thing that she now says he must do before he can seek relief against her. She did this by returning his checks. There is also the testimony of the appellant that she would not comply with the decree if Held made the payments. This effectively removed her from the position of a person willing to comply, if the conditions imposed on the other party to the decree were met, and left her boldly refusing to comply under any circumstances. Held is, of course, liable for the support money he has been ordered to pay by the court, but the one preventing him from paying it cannot thereby be freed of her own obligations, and the point is consequently without merit.

■ Another contention urged is that no copy of the decree was served on the appellant prior to the time that the order to show cause was issued. It is stated that under Section 511.340 RSMo1949, V.A.M.S., service of the decree upon the party bound thereby is a prerequisite to punishment for refusal to obey the decree. Section 511.-340 is as follows:

"When a judgment requires the performance of any other act than the payment of money, a certified copy of the judgment may be served upon the party against whom it is given, and his obedience thereto required. If he neglect or refuse, he may be punished by the court as for a contempt, by fine or imprisonment, or both, and, if necessary, by sequestration of property."

This statute was construed in Ex parte Le Mond, 295 Mo. 586, 245 S.W. 1057, 1058, on which case the appellant relies.

In the Le Mond case the petitioner brought an action for a writ of habeas corpus in the Supreme Court after she had been fined and sentenced to jail for ten days by a judge in the circuit court. She had been the defendant in a divorce case in which she had made default and a decree had been entered against her. The decree provided " 'that the care, custody and control of the minor child of the parties hereto, named Genevieve, six years of age, be awarded to the board of children's guardians of the City of St. Louis, Mo.' ". Mrs. Le Mond was cited for contempt for refusing to comply with the decree and her return to the citation contained an allegation that she had no knowledge of the order and that it directed her to do nothing. The matter was determined in the circuit court on the pleadings with the court holding her in contempt and imposing the punishment mentioned. She was discharged from custody by the Supreme Court, which held:

"Clearly, under the facts before us, there was no service upon petitioner of a certified copy of the order in question. She could not therefore, under the statute, be adjudged to have neglected or refused to comply with the order. Nor could she be said to have willfully disobeyed or resisted the order, which the pleadings show she was not advised of."

The very obvious purpose of the first part of the statute is to require that a party cited

for refusal to obey a decree or order of a court be fully informed of that order in time to comply with it before being punished for noncompliance. In the Le Mond case the party cited was never informed of the decree or served with it. This is quite different from the facts before us, for the appellant here knew of the decree and was actually served with it in time to purge herself of contempt prior to the court passing judgment upon the matter. The sentence directing that she be confined in jail until she complies does not, as in the Le Mond case, reach back to punish her for past refusal, by a fixed fine and sentence, but predicates the punishment upon the continued refusal to obey. Under the facts present she cannot be heard to say that she was deprived of any rights because the decree was not served upon her prior to the citation as she knew of its terms and was served with the certified copy of it prior to being held in contempt, and it is clear that she would not have obeyed the decree under any circumstances.

Inherent in every court of general jurisdiction is the power to punish for disobedience of its lawful orders. This power is as old as our courts and without it the orders and decrees of courts would be of such impotency that they would command neither respect nor obedience. Zeitinger v. Mitchell, Mo.Sup., 244 S.W.2d 91; Thompson v. Farmers' Exchange Bank, 333 Mo. 437, 62 S.W.2d 803, loc. cit. 811; In re West, 348 Mo. 30, 152 S.W.2d 69. The statute relied upon is intended to prevent the unreasonable use of the power and not to curb its legitimate end. The trial court was reasonable and patient and the statute affords the appellant no relief from the results of her refusal to obey the decree with which she was served and of which she was fully informed.

It is also contended by the appellant that the decree did not specifically require her to perform any act. We are cited to cases which hold that a divorce decree should contain positive and specific directions as it relates to the custody of children. Schumm v. Schumm, Mo.App., 223 S.W.2d 122; Perr v. Perr, Mo.App., 205 S.W.2d 909; Ex parte Le Mond, supra. It appears that the decree here in question meets the requirements stated in those cases for it sets out the day, the hour, and the place to which the child should be taken to be turned over to its father. The appellant could have had no doubt that it was directed to her as custodian of the child as she was the only other party to the proceedings to modify the original decree. Under these circumstances it was sufficiently specific.

For the reasons stated, it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the Court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., BENNICK, J., and ADAMS, Special Judge, concur.