Mary G——, Petitioner,

v.

Don SOUDER, Sheriff of Douglas County, Missouri, Respondent.

No. 7678.

Springfield Court of Appeals.

Missouri.

Oct. 23, 1957.

See, also, R—— v. Souder, 305 S. W.2d 888.

James E. Curry, Ava, for petitioner.

John M. Bragg, Ava, for respondent.

STONE, Judge.

The petitioner in this original proceeding in habeas corpus (to whom we refer as Mary that her three minor children may not be identified with this recordation of their mother's sordid conduct) is held by the Sheriff of Douglas County, Missouri, under a "capias execution" which states that Mary "was convicted of the offense of contempt of court and her punishment was assessed at a term of thirty days in the county jail." Mary's conviction was upon a verified information filed by the Prosecuting Attorney of Douglas County under Section 211.400,[1] in a separate case styled State of Missouri vs. Mary G———— (hereinafter referred to as the contempt proceeding). After reciting that on the 5th day of April, 1957, in the Juvenile Division of the Circuit Court of Douglas County, Mary's three minor children "were adjudged to be neglected children and in need of the protection of said Juvenile Court" and that "it was ordered and adjudged that Mary G———— not permit Lee R———— to come into her home," the information charged that Mary "negligently disobeyed said orders and judgments so made on April 5th, 1957, by permitting the said Lee R———— to come into her home where said named children reside contrary to the orders and judgments of the court and

---

1. "After any child shall have come under the care or control of the juvenile court as herein provided, any person who shall thereafter knowingly or negligently contribute to the delinquency or neglect of such child, or shall knowingly or negligently disobey, violate or interfere with any lawful order of said court with relation to said child, shall be guilty of contempt of court, shall be proceeded against as now provided by law and punished by imprisonment in the county jail for a term not exceeding six months or by a fine not exceeding five hundred dollars or by both such fine and imprisonment." See also Section 211.540. All statutory references herein are to RSMo 1949, V.A.M.S.

against the peace and dignity of the State." Following trial, the court entered a "judgment of guilty of the charge of contributing to the neglect of children who are wards of the Juvenile Court of Douglas County, Missouri," and assessed punishment at imprisonment in the county jail for thirty days. After an unsuccessful motion for new trial, defendant was sentenced and the court ordered "defendant committed."

The order of court, which the information in the contempt proceeding charged that Mary "negligently disobeyed," had been entered on April 5, 1957, in a statutory neglect proceeding under Chapter 211, in which the court had adjudged that Mary's three minor children were "neglected children" within the meaning of Section 211.-310, "by reason of being permitted by the mother to live in the home with a disreputable person, Lee R———, and are suffering from the depravity of the mother in permitting this person to be in the home." The order in the neglect proceeding then stated that "(a)ll of said children are found to be in need of the care and protection of the State of Missouri and are hereby made wards of the Juvenile Division of the Circuit Court of Douglas County, Missouri, * * * and committed to the custody of the mother, Mary G———, until further order of this court upon the specific condition that Lee R———, the person who has been living in the home, no longer is permitted to live there or visit there and so long as said mother conducts herself as a moral, decent citizen."

 Mary's first contention is that she could not have been guilty of the charge

leveled against her in the information in the contempt proceeding (i. e., that she "negligently disobeyed" the order in the neglect proceeding "by permitting the said Lee R——— to come into her home") for the simple but sufficient reason that she had not been ordered to exclude Lee from her home (and, for that matter, had not been ordered either to do, or to refrain from doing, any act) but that the order in the neglect proceeding (insofar as it pertained to Lee) simply granted custody of her three minor children to Mary "upon the specific condition" that Lee be not permitted to live or visit in Mary's home. We are constrained to agree. The term "order," as used in Section 211.400, necessarily carries the inherent connotation of a mandate, command or direction authoritatively given.[2] According ordinary meaning to the plain language of the order in the neglect proceeding, we find no mandate, command or direction that Lee should not reside or visit in Mary's home, but rather the statement of a "specific condition," whose breach afforded a valid basis for taking her three children from Mary's custody but *not* for a contempt charge that she "negligently disobeyed" the order.[3] A contrary conclusion would impinge on the settled principle that, to support a charge of contempt for disobedience thereof, an order will not be expanded by implication in the contempt proceeding but must be so specific and definite as to leave no reasonable basis for doubt as to its meaning.[4]

 But, we need not rest our disposition of the instant case solely upon construction of the order in the neglect proceeding, for there are yet other and more com-

---

2. See definitions of "order" in Black's Law Dictionary (4th Ed.), p. 1247; Carolina Aluminum Co. v. Federal Power Commission, 4 Cir., 97 F.2d 435, 436; Brady v. Interstate Commerce Commission, D.C. W.Va., 43 F.2d 847, 850; Webster's New International Dictionary (2nd Ed.), par. 22, loc. cit. 1716.

3. Compare Ex parte Le Mond, 295 Mo. 586, 593–594, 245 S.W. 1057, 1058–1059 (1); Pogue v. Smallen, 241 Mo.App. 707, 712–713, 238 S.W.2d 20, 22(3, 4).

4. Middleton v. Tozer, Mo.App., 259 S.W.2d 80, 88; Kelly v. City of Cape Girardeau, 230 Mo.App. 137, 89 S.W.2d 693, 696 (6, 7); Oliver v. Orrick, 220 Mo.App. 614, 288 S.W. 966, 969(6); 17 C.J.S. Contempt § 12, loc. cit. 16. See, also, Terminal Railroad Ass'n v. United States, 266 U.S. 17, 29, 45 S.Ct. 5, 8, 69 L.Ed. 150, 155; Star Bedding Co. v. Englander Co., 8 Cir., 239 F.2d 537, 542, affirming D.C.Mo., 133 F.Supp. 704, 705(3).

pelling considerations which necessitate Mary's discharge under our writ of habeas corpus. The contempt with which Mary was charged was indirect criminal contempt—*indirect (or constructive)* in that it arose out of matters which occurred outside the presence of the court but which tended to belittle, degrade, obstruct, interrupt, prevent or embarrass the administration of justice, and *criminal* in that the alleged acts were directed against the majesty of the law and against the dignity and authority of the court as an agency of government, so that the state and the people became interested in prosecution and the primary purpose of punishment was the vindication of public authority.[5] The inherent power of constitutional courts to punish for all contempts (whether direct or indirect, and whether criminal or civil) has been recognized and exercised since the dawn of judicial antiquity.[6] However, as exemplified by Section 476.130 which is declaratory of the common law, there is a basic and vital difference in the procedure to be followed with respect to direct and indirect contempts, in that a court may act ex mero motu and may punish and commit summarily an offender guilty of *direct* contempt, while one accused of *indirect (or constructive)* contempt is entitled to reasonable notice and a hearing.[7]

This requirement of reasonable notice in a case involving an alleged *indirect* contempt is not satisfied by a showing that the accused was present in court at the time of trial and adjudication and "had actual notice then and there of what was going on" [Ex parte Clark, 208 Mo. 121, 149, 106 S.W. 990, 998(12), 15 L.R.A., N.S., 389] but rather contemplates and necessitates a written notice fairly and fully informing the accused of the specific acts of contempt with which he is charged,[8] and so given as to afford "a reasonable time to make his (or her) defense." Section 476.-130. Any notice short of that would make a hollow mockery of the fundamental and abiding truth that reasonable notice to one whose civil rights or personal liberty may be affected is a veritable cornerstone of our judicial system,[9] would constitute nothing more than an exquisite exercise in frustrating futility, sometimes misleading and always meaningless, and would be but sounding brass and tinkling cymbal, a notice in form but not in substance.

The judgment in the case at bar recites that Mary was found "guilty of *contributing to the neglect of children * * * as charged in the information*," but the information shows that Mary actually was charged with *negligent disobedience of the court order* entered in the neglect proceeding on April 5, 1957. That a charge of contributing to the neglect of a child and a charge of negligently disobeying a lawful order of court with relation to a child are

5. For discussions of the classifications of contempts as direct or indirect (or constructive) and as criminal or civil, see State ex inf. Crow v. Shepherd, 177 Mo. 205, 228–229, 76 S.W. 79, 86(2–7); Ex parte Clark, 208 Mo. 121, 144–146, 106 S.W. 990, 996–997(4–7), 15 L.R.A.,N.S., 389; State v. Norman, Mo.App., 193 S.W. 2d 391, 392(2–4); 12 Am.Jur., Contempt, §§ 4–6, pp. 390–394.

6. Zeitinger v. Mitchell, Mo., 244 S.W.2d 91, 97(10); State ex inf. Crow v. Shepherd, supra, 177 Mo. loc. cit. 218–228, 76 S.W. loc. cit. 83–86(1); White v. Held, Mo. App., 269 S.W.2d 125, 128(3).

7. State ex inf. Crow v. Shepherd, supra, 177 Mo. loc. cit. 229, 76 S.W. loc. cit. 86(8); Ex parte Clark, supra, 208 Mo. loc. cit. 149, 106 S.W. loc. cit. 997(10); Ex

parte Nelson, 251 Mo. 63, 105, 157 S.W. 794, 808; Osborne v. Purdome, Mo., 244 S.W.2d 1005, 1011(5), 29 A.L.R.2d 1141, certiorari denied 343 U.S. 953, 72 S.Ct. 1046, 96 L.Ed. 1354, rehearing denied 343 U.S. 988, 72 S.Ct. 1072, 96 L.Ed. 1375.

8. Sands v. Richardson, Mo.App., 252 S.W. 990, 992(1), 994(3); 12 Am.Jur., Contempt, § 68, p. 435; 17 C.J.S. Contempt § 72b(1), pp. 90–91. See, also, State ex rel. Smith v. Empie, 221 Mo.App. 721, 725, 285 S.W. 765, 767(1).

9. Compare Hoppe v. St. Louis Public Service Co., 361 Mo. 402, 406, 235 S.W. 2d 347, 350(7), 23 A.L.R.2d 846; In re Jackson's Will, Mo.App., 291 S.W.2d 214, 225(22, 23); State v. Pogue, Mo.App., 282 S.W.2d 582, 585.

not one and the same, and may not be so treated, is apparent from the language of Section 211.400 hereinbefore quoted marginally. See also Section 211.540. Curtly stated, Mary was accused of one thing but convicted of another. Although contempt proceedings are sui generis and technical accuracy therein is not required,[10] such proceedings are criminal in nature,[11] the judgment and commitment must be construed strictly in favor of the accused, and no presumption or intendment may be indulged in aid thereof.[12] In the light of these principles, it is clear that the judgment under consideration was not responsive to the information filed in the contempt proceeding, and that the adjudication of Mary's guilt, on a charge of which she had no legal notice, was void.

■■ Furthermore, in a contempt case the facts and circumstances constituting the offense, and not simply the legal conclusions of the court, should be recited in the judgment [13] and likewise in the commitment.[14] In sweeping generalities, Mary was adjudicated "guilty of contributing to the neglect of children who are wards of the Juvenile Court of Douglas County" and was committed under a "capias execution" reciting only that she "was convicted of the offense of contempt of court." Under the authorities cited, both the judgment and the commitment were insufficient for failure to set forth the facts and circumstances constituting the alleged contempt.

■ The interest of the state, as parens patriae, in Mary's neglected children found appropriate expression in the neglect proceeding. But judges, "likened unto priests attending between the horns of the altar in the Temple of Justice," must not permit their concern for the welfare of neglected children (proper and necessary as such concern is) to result in disregard or neglect of their solemn charge to keep "the lamp of personal liberty in oil, well trimmed and brightly burning," for "the liberty of the citizen is an immediate jewel of the law to be sacredly cherished and hedged about withal." Ex parte Clark, supra, 208 Mo. loc. cit. 143, 106 S.W. loc. cit. 996; Ex parte Creasy, 243 Mo. 679, 698, 148 S.W. 914, 920. Whatever may have been the depth, degree or duration of Mary's moral degeneracy or degradation, her constitutional rights and guaranties must be safeguarded and preserved with the same watchful zeal which protects the innocent and virtuous. Ex parte Fuller, 330 Mo. 371, 379, 50 S.W.2d 654, 657.

With the facts of Mary's detention laid bare by our writ of habeas corpus, it is plain that she should be discharged from custody. It is so ordered.

McDOWELL, P. J., and RUARK, J., concur.

10. Osborne v. Purdome, supra, 244 S.W. 2d loc. cit. 1012; Conley v. United States, 8 Cir., 59 F.2d 929, 935; 17 C.J.S. Contempt § 72a, p. 88.

11. Osborne v. Purdome, supra, 244 S.W. 2d loc. cit. 1011; State ex rel. Smith v. Empie, supra, 221 Mo.App. loc. cit. 727, 285 S.W. loc. cit. 768; Sands v. Richardson. supra, 252 S.W. loc. cit. 994; Ex parte Heffron, 179 Mo.App. 639, 651, 162 S.W. 652, 656; 12 Am.Jur., Contempt, § 67, p. 434.

12. Sands v. Richardson, supra, 252 S.W. loc. cit. 994; Ex parte Heffron, supra, 179 Mo.App. loc. cit. 651, 162 S.W. loc. cit. 656. See, also, Ex parte Stone, Mo., 183 S.W. 1058, 1059(3); Ex parte Shull, 221 Mo. 623, 628, 121 S.W. 10, 11(1).

13. Ex parte Fuller, 330 Mo. 371, 378, 50 S.W.2d 654, 657(3); Ex parte Stone, supra, 183 S.W. loc. cit. 1059(4); Ex parte Creasy, 243 Mo. 679, 704, 148 S.W. 914, 922; Ex parte Shull, supra, 221 Mo. loc. cit. 629, 121 S.W. loc. cit. 12.

14. Section 532.410(3); Reardon v. Frace, 344 Mo. 448, 126 S.W.2d 1167; Ex parte Stone, supra, 183 S.W. loc. cit. 1059; Ex parte Shull, supra, 221 Mo. loc. cit. 627, 121 S.W. loc. cit. 11; Ex parte Heffron, 179 Mo.App. loc. cit. 651, 162 S.W. loc. cit. 656. Consult also Osborne v. Purdome, supra, 244 S.W.2d loc. cit. 1011. And, see Sections 476.140 and 476.110(3); Novak v. Weismantel, Mo.App., 261 S.W. 2d 491, 493; White v. Hutton, Mo.App., 240 S.W.2d 193, 200(9).