Ex parte **John C. NEAL, Jr.,** Petitioner.

No. 27020.

Missouri Court of Appeals,
Kansas City District.

March 14, 1974.

Richard E. McFadin, McFadin & White, No. Kansas City, for petitioner.

John S. Stubbs, David P. Macoubrie, Cleaveland & Macoubrie, Chillicothe, for respondent.

Before DIXON, C. J., and PRITCHARD, SWOFFORD and WASSERSTROM, JJ.

SWOFFORD, Judge.

This is an original proceeding in habeas corpus. Upon the application of John C. Neal, Jr., alleging that he was being unlawfully restrained of his liberty by respondent Kelsie Reeter, Sheriff of Livingston County, our writ was issued, and we admitted the petitioner to bail.

The underlying facts of this case are that Karlene Kay Neal filed a divorce action against her husband, John C. Neal, Jr., petitioner herein, in the Circuit Court of Livingston County, Missouri in May of 1973. As an incident of this divorce action, that court on July 17, 1973 issued a Temporary Injunction against the petitioner. This order shows that petitioner personally appeared, was represented by counsel (not his present attorney) and waived service of plaintiff's petition for injunction and notice of hearing and "stipulates and consents to the Court entering said temporary injunction against Defendant as prayed for" in plaintiff's petition. The injunction provided:

"Now, therefore, it is hereby ordered that the Defendant be enjoined from annoying, harassing, molesting, interfering with, telephoning, assaulting, threatening or otherwise interfering with Plaintiff and the minor children born of said marriage, and that Defendant be further enjoined from going to the place of residence of said Plaintiff and the minor children except as provided by this court."

There is no dispute about the authenticity and wording of this injunction nor about any of the other records and documents herein referred to, and copies of all of these are filed in this court and are before us.

After the issuance of this temporary injunction and on or about September 12, 1973, Karlene Kay Neal, plaintiff in the pending divorce suit, filed therein her affidavit wherein she stated that the petitioner had violated the injunction on September 12, 1973 and on "numerous other occasions".

Pursuant thereto, the Circuit Court issued a "Citation for Contempt of Court" which was in the following terms (omitting caption):

"TO: JOHN C. NEAL, JR., UTICA, MISSOURI

You are hereby ordered to show cause in the Circuit Court at Chillicothe, Missouri, on the 24th day of September, 1973, at 9:00 o'clock a. m., or as soon thereafter as this matter can be heard, why you should not be found and adjudged in contempt of this Court for an alleged violation of a temporary injunction of this Court rendered July 17, 1973, in the above entitled suit, to which injunction and the terms thereof reference is hereby made and incorporated herein as if set out fully, which violation allegedly occurred September 12, 1973, by your alleged assault and battery upon Karlene Kay Neal.

Kenneth R. Lewis
Circuit Judge
Livingston, County, Missouri"

The hearing date of September 24, 1973 was continued to October 1, 1973 at the request of the petitioner's present attorney, then recently retained. On October 1, 1973, the hearing was again continued due to some misunderstanding between the court and petitioner (not pertinent to our decision) and because the petitioner was out of the state and unavailable the hearing was set for October 18, 1973 and the court issued an attachment for the body of the

petitioner. On the morning of October 18, 1973, while enroute to the hearing, the petitioner was taken from his attorney's car and placed in custody under the attachment.

The hearing was held and evidence received with the petitioner and his counsel participating on October 18, 1973. At the conclusion of such hearing, the court entered its "Judgment of Contempt" in which it specifically found the petitioner guilty beyond a reasonable doubt of two separate violations of the injunction, one on September 6, 1973 and the other on September 12, 1973, and sentenced him to sixty (60) days confinement in the county jail in punishment thereof.

Thereupon, the court issued its "Commitment After Jail Sentence" which (omitting caption) was in words and figures as follows:

"STATE OF MISSOURI ⎱ SS
COUNTY OF LIVINGSTON ⎰

TO THE JAILORS OF THE COUNTIES OF LIVINGSTON AND CARROLL: WHEREAS, the above-named Defendant John C. Neal, Jr., has heretofore been cited for criminal contempt of Court for willful violation of the temporary injunction of this Court; and

WHEREAS, the said Defendant has been found guilty beyond a reasonable doubt of criminal contempt of Court; and

WHEREAS, this Court has duly pronounced sentence and rendered judgment against the said Defendant, in accordance with law, that he be confined in the County Jail for a term of sixty (60) days.

NOW THEREFORE THESE PRESENTS ARE TO COMMAND YOU that you take and securely hold the body of said Defendant in your custody for a term of sixty (60) days.

WITNESS THE HONORABLE Kenneth R. Lewis, Judge of the said Circuit Court at his office in Livingston County, Missouri on this 18th day of October, 1973.

H. J. Jones, Circuit Clerk
By Doris Engle Deputy

I hereby certify that I served the within Commitment on the 18th day of October, 1973, by placing the within named defendant John C. Neal, Jr., in the Carroll County jail.

Kelsie Reeter

(Filed October 24, 1973)"

This proceeding was commenced by petitioner on October 25, 1973 and this court issued its Writ of Habeas Corpus and admitted petitioner to bail on October 29, 1973.

On October 31, 1973 the Circuit Court issued its "Order of Commitment to Jail" Nunc Pro Tunc, which set forth in specific detail "the particular circumstances" of petitioner's offenses as contained in the court's original judgment and as required by Section 476.140 RSMo 1969, V.A.M.S.

The issues before us are made by the respondent's amended return to the Writ of Habeas Corpus and the petitioner's denial or traverse of such return and the court documents filed therewith. Both sides have ably briefed this case and the petitioner's claims for the protection of the writ may be summarized as follows: *First*, that the Notice or Citation to Show cause was not adequate or sufficient because it did not designate that the contempt charged was criminal in nature; *Second*, that the commitment order was defective because it did not set forth the particular facts and circumstances upon which the conviction was based; *Third*, that the court erred in attempting to correct this invalid commitment order nunc pro tunc; *Fourth*, that the evidence adduced at the hearing failed to show petitioner's guilt beyond a reasonable doubt; and *Fifth*, the court erred in failing to appoint the counsel for petitioner's wife as a representative of the state in the contempt proceedings.

The fourth and fifth points of petitioner are without merit.

We have not been favored by a transcript of the evidence adduced at the hearing on the contempt charge. In this type of proceeding where the sufficiency of the evidence is challenged, we do not review the matter de novo but are limited to a determination of whether the findings of the trial court are supported by the evidence. Mechanic v. Gruensfelder, 461 S. W.2d 298, 313–314 (Mo.App.1970). Both the briefs herein filed contain statements of facts but in the absence of an official transcript, we must assume that the findings of the learned trial judge were supported by the evidence. The fourth point is ruled against petitioner.

It is implicit under Rule 35.01(b), V.A.M.R. that in a criminal contempt proceeding the court may appoint an attorney to represent the court or state. Controversy in this area usually arises upon objection to a *court's appointment* of an attorney who has some special interest in the matter, such as, representation of a party in an underlying case. See Curtis v. Tozer, 374 S.W.2d 557, 584 (Mo.App.1964). As we view petitioner's fifth point, his complaint is that the *court failed to appoint* his wife's attorney as a representative of the state. Mr. Macoubrie, the wife's attorney, did in fact handle this proceeding for the state from its outset, and so far as we can tell did so in a very able and fair manner. Petitioner's brief states that Mr. Macoubrie was acting as special prosecutor on October 1, 1973 and so far as the record before us discloses, petitioner made no objection to his acting in such capacity until his traverse of respondent's return. Even then (and now) it appears that his objection is based upon the fact (if it is a fact) that no *formal* appointment was made by the court of Mr. Macoubrie to act

in that capacity. No prejudice is alleged or disclosed. We rule petitioner's fifth point against him.

This brings us to more serious and vital considerations raised by petitioner.

A proceeding for criminal contempt is *sui generis* and as such is controlled by its own rules—not the rules of criminal law. Osborne v. Purdome, 244 S. W.2d 1005 (Mo. banc 1952); Osborne v. Purdome, 250 S.W.2d 159 (Mo. banc 1952); Curtis v. Tozer, supra, 374 S.W.2d at 569. No useful purpose would be served to here again review the evolution of and the various kinds of contempt recognized in Missouri and the basic philosophy of and needs for such proceedings. Scholarly and exhaustive opinions are extant as fundamental guidelines[1]. Suffice it to say that the petitioner here was charged with an indirect or constructive criminal contempt. His alleged acts were in violation of the restraint of a lawful court injunction allegedly committed outside the presence of the court—the doing of acts specifically forbidden—against the dignity of the court and in derogation of its decree, and thus an interference with the judicial process and "the majesty of the law". So charged, he was entitled to procedural due process which included the proper legal notice or citation. Rule 35.01(b) provides in part:

> "* * * The notice * * * shall state the essential facts constituting the criminal contempt charged *and describe it as such*. * * *" (Emphasis supplied)

Petitioner's first point attacks the sufficiency of the notice or citation herein as failing to comply with the requirements of this Rule. We agree that the notice was defective in that it does not describe the charge as criminal contempt.

1. See Osborne v. Purdome (two cases), supra; Curtis v. Tozer, supra; Mechanic v. Gruensfelder, supra; G—— v. Souder, 305 S.W.2d 883 (Mo.App.1957); Ex parte Fuller, 330 Mo. 371, 50 S.W.2d 654 (banc 1932); Glenn v. Hendrix, 349 S.W.2d 532 (Mo.App.1961).

In Mechanic v. Gruensfelder, supra, 461 S.W.2d at l.c. 309, the court said:

"The notice [as required by Rule 35.-01(b)] shall state the essential facts constituting the contempt *and must describe it as criminal."* (Emphasis supplied)

In *Mechanic* the notice was held to be sufficient because it specifically referred to Rule 35.01(b) which applied only to criminal contempt. The notice before us does not describe the charge as criminal contempt nor does it make any reference to Rule 35.01(b).

But respondent argues that this defect in the notice was not fatal to the proceeding because the petitioner *knew* from other sources the nature of the proceeding. This argument is unsound and is rejected.

This position urging that actual knowledge is an acceptable substitute for the mandatory notice was emphatically rejected in G—— v. Souder, 305 S.W.2d 883 (Mo.App.1957) which related to the lack of a statement of "the essential facts constituting the criminal contempt charged" in the notice, a requirement also mandated by Rule 35.01(b). There, the court said, l.c. 886:

"This requirement of reasonable notice in a case involving an alleged *indirect* contempt is not satisfied by a showing that the accused was present in court at the time of the trial and adjudication and 'had actual notice then and there of what was going on' [Ex parte Clark, 208 Mo. 121, 149, 106 S.W. 990, 998(12), 15 L.R.A.,N.S., 389] but rather contemplates and necessitates a written notice fairly and fully informing the accused of the specific acts of contempt with which he is charged * * *."

■ Petitioner further attacks the legality of the notice because it did not state "the essential facts constituting the criminal contempt charged" as required by Rule 35.01(b). While such citation or notice need not meet the technical requirements of a criminal information or indictment it must contain specific facts sufficient to ad-

vise the alleged contemner of the actions which it is claimed constitute the criminal contempt. Mechanic v. Gruensfelder, supra. The respondent counters this complaint with a statement that a copy of the affidavit of Karlene Kay Neal was attached to and served with the notice or citation and thus petitioner was fully advised of the facts. While there is nothing in the record to show that the affidavit was so served upon petitioner, we do not doubt respondent's counsel's statement. However, reference to these documents shows that the citation refers to only *one* incident occurring on September 12, 1973 when petitioner is charged with an assault and battery. The affidavit refers specifically to this incident and states that *"on numerous other occasions"* petitioner has violated the injunction by harassing and annoying plaintiff *and* by coming to her home late at night in a drunken condition. The judgment of contempt found petitioner guilty of the September 12, 1973 violation and also a specific violation of the injunction on September 6, 1973, the essential facts of which are not set forth in either the citation or the affidavit.

We hold the notice and citation insufficient under the plain provisions of Rule 35.01(b) and that the petitioner's first point is well taken.

Under petitioner's second point, the same charge is leveled at the commitment following judgment. Section 476.140 R.S.Mo 1969, V.A.M.S. provides:

"Commitment for contempt to set forth particulars

Whenever any person shall be committed for any contempt specified in sections 476.010 to 476.310, the particular circumstances of his offense shall be set forth in the order or warrant of commitment."

■ It has long been the rule that both the court's judgment in contempt and the commitment (under the above statute) must recite the facts and circumstances constituting the offense "and not simply

the legal conclusions of the court". G_____ v. Souder, supra, 305 S.W.2d at l.c. 887; Ex parte Fuller, 330 Mo. 371, 50 S.W.2d 654 (banc 1932); Glenn v. Hendix, 349 S.W.2d 532 (Mo.App.1961); Curtis v. Tozer, supra.

In Ex parte Stone, 183 S.W. 1058 (Mo. 1916) the court in considering this statute (then Section 3884 RS 1909) and speaking through Blair, J., said at l.c. 1059:

> "It is suggested the rule applied is a strict one. It is designedly so. When a court summarily deprives a citizen of his liberty or property, it is right to require of it exact obedience to the demand of the statute for a statement of 'the particular circumstances of his offense,' and in such circumstances *any departure from our heretofore uniform course in exacting literal and full compliance therewith* would be to disobey the legislative mandate, and possibly endanger individual liberty." (Emphasis supplied)

■ The respondent concedes that the original commitment in this case was legally insufficient for the reasons noted but says that this defect was cured because "it was physicallly attached to and with the judgment of contempt." Nothing in the record before us supports this statement. The original commitment order does not purport to set out said judgment nor incorporate it by reference so as to make it a part of the commitment. The sheriff's return of service on the face of the commitment (all on a single page) certifies only that he "served the within Commitment". The court in In re Randolph, 474 S.W.2d 36 (Mo.App.1971) stated, l.c. 39:

> "So, a commitment for criminal contempt, otherwise void on its face, cannot be validated because the judgment upon which it purports to be based, *but which is not made a part of the commitment,* is a lawful conviction for such contempt." (Emphasis supplied)

Respondent is asking us to assume or "read into the record" something that is simply not there, and thus breathe the life of legality into an otherwise void and illegal commitment. This we cannot do. Petitioner's second point is found in his favor.

The third and last point for our consideration is the petitioner's claim that the court erred in attempting to correct the invalid commitment by its order of October 31, 1973 nunc pro tunc.

■ It is true that an order nunc pro tunc functions in judicial proceedings to correct mutual mistakes of fact or clerical errors or misprision of the court clerk. But it can never be utilized to correct a judicial error. Ackley v. Ackley, 257 S.W. 2d 401, 403 (Mo.App.1953); Wiseman v. Lehman, 464 S.W.2d 539, 542 (Mo.App. 1971). Neither party has cited any case directly in point as to the problem before us and our independent research has revealed no Missouri case dealing with a nunc pro tunc entry to correct a defective order of commitment. There seem to be few cases on this subject from other jurisdictions. There are two which are soundly reasoned and which reasoning we adopt as appropriate here.

In Martin v. Superior Court, 199 Cal. App.2d 730, 18 Cal.Rptr. 773, the lower court found Martin to be in contempt for failure to make alimony and support payments. On December 1, 1962, the court sentenced Martin to five days in jail and signed the order and commitment for contempt. Such order was defective because it failed to include a finding that it was within the power of Martin to make the payments. On December 13, 1961, the court issued an amended Commitment (amended nunc pro tunc). The appellate court held that it was error to amend the defective commitment, and said, 18 Cal. Rptr. l.c. 779:

> "If an order, which by statute is final and conclusive, can be amended and reamended to supply vital deficiencies therein, the feet of the litigant would be

standing on quick-sand, without any idea when he could take effective proceedings to annul the order."

In Application of Balucan, 44 Haw. 271, 353 P.2d 631 (1960), the trial court held a witness in contempt for refusing to answer a question. The original order of April 12 was amended the next day to conform to the statute which required the circumstances of the offense to be set out both in the judgment and the warrant of commitment. In holding this to be error, the court said, 353 P.2d l.c. 635:

"We conclude that under R.L.H.1955, § 269-5, the requirement that the circumstances of the contempt be set forth in the judgment and mittimus is jurisdictional. If the statute has not been complied with the petitioner cannot be held on the ground that the judgment can be corrected and a mittimus issued at a later date."

The above cited cases stand as persuasive authority for the proposition that a defective commitment order cannot be corrected nunc pro tunc.

The order of commitment in a criminal contempt case is by its very nature and purpose a judicial and not a clerical function and an order nunc pro tunc made 13 days after the commitment and after our writ had issued is not legally justified on the basis that it was employed to correct a mere "clerical error". Petitioner's third point is ruled in his favor.

For the reasons herein stated, the petitioner is discharged and his bail bond filed herein is discharged and the cash security therefor in the amount of $3500.00 is ordered returned to L. O. Girdner, surety thereunder.

All concur.

SHANGLER and SOMERVILLE, JJ., not participating.